In the Matter of the Honorable April T. Ademiluyi, Judge of the Circuit Court of Maryland for Prince George's County, 7th Judicial Circuit, JD No. 2, September Term, 2023

**JUDICIAL DISCIPLINE – SANCTIONS – REMOVAL –** Supreme Court of Maryland removed from office circuit court judge who engaged in egregious misconduct that was prejudicial to administration of justice. Supreme Court concluded that judge violated numerous provisions of Maryland Code of Judicial Conduct ("MCJC"), including provisions that require judge to perform duties of office fairly and impartially. Supreme Court concluded that judge's conduct violated Maryland Rules 18-101.1 (Compliance with Law), 18-101.2 (Promoting Confidence in Judiciary), 18-102.2 (Impartiality and Fairness), 18-102.3(a) (Bias, Prejudice, and Harassment), 18-102.5(b) and (c) (Competence, Diligence, and Cooperation), 18-102.8(b) (Decorum, Demeanor, and Communication with Jurors), 18-102.9(a) and (c) (Ex Parte Communications), 18-102.11(a)(4) and (c) (Disqualification), 18-102.16(a) (Cooperation with Disciplinary Authorities), and 18-104.4(a), (b), and (d) (Political Conduct of Candidate for Election).

Supreme Court concluded that, given wide-ranging and pervasive nature of judge's misconduct, inability to comply with fundamental requirement to perform duties of office fairly and impartially, and lack of remorse for blatant and egregious violations of MCJC, removal from office was only disposition sufficient to preserve integrity, independence, and impartiality of judiciary and assure public that judiciary does not condone such egregious judicial misconduct.

Maryland Commission on Judicial Disabilities
Case No. CJD 2022-079

Argued: May 6, 2024

_____

IN THE MATTER OF THE HONORABLE
APRIL T. ADEMILUYI, JUDGE OF THE
CIRCUIT COURT OF MARYLAND FOR
PRINCE GEORGE'S COUNTY, 7TH
JUDICIAL CIRCUIT

_____

Watts
Booth
Biran
Gould
Eaves
Raker, Irma S. (Senior Justice,
Specially Assigned)
Hotten, Michele D. (Senior Justice,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: August 15, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

"In Maryland, judges are expected to abide by certain ethical standards, set forth in the Maryland Code of Judicial Conduct ('MCJC'), to ensure they conduct themselves in a manner consistent with preserving the integrity of the judiciary." Matter of Nickerson, 473 Md. 509, 512, 251 A.3d 1086, 1088 (2021) (footnote omitted).[1]  When a judge's conduct seemingly falls short of the ethical standards to which judges are held, "the Maryland Constitution vests the Maryland Commission on Judicial Disabilities (the 'Commission') with the authority to investigate alleged instances of judicial misconduct and, where appropriate, recommend that this Court take appropriate disciplinary action, up to and including removal from office." Id. at 512, 251 A.3d at 1088 (citing Md. Const. art. IV, § 4B).

This case concerns April T. Ademiluyi, formerly an Associate Judge of the Circuit Court for Prince George's County, who was elected to office in the November 2020 General Election.  On June 29, 2023, Investigative Counsel charged Judge Ademiluyi with having engaged in sanctionable conduct that violated multiple provisions of the MCJC.[2]

---

[1]The MCJC is codified at Maryland Rules 18-100.1 to 18-104.6.  The substantive provisions and much of the structure of the MCJC "are based in large part on the 2007 Model Code of Judicial Conduct proposed by the American Bar Association (ABA Model Code)[.]"  Md. R. 18-100.1(a).  The MCJC "assigns each Rule of Judicial Conduct a Maryland Rule number . . . [that] conforms to that of the ABA Model Code so that the parallel will be obvious."  Md. R. 18-100.1(a) Committee note.  "[F]or example, ABA Rule 1.1 (Compliance with the Law) is Maryland Rule 18-101.1, which is also captioned 'Compliance with the Law.'"  Id.

[2]Pursuant to Maryland Rule 18-411(e)(1), subject to this Court's approval, the Commission shall appoint an attorney as Investigative Counsel.  Among other powers and duties, Investigative Counsel has the duty to investigate complaints concerning judges, see Md. R. 18-422(a)(1), and, at the direction of the Commission upon a finding by the Commission of probable cause, to file charges against judges, see Md. R. 18-431(a).

Investigative Counsel alleged that, among other things, Judge Ademiluyi engaged in sanctionable misconduct as a candidate for election, misconduct as a judge in training, misconduct involving her colleagues, misconduct with her staff, misconduct as a respondent in a judicial discipline proceeding, and, most importantly, misconduct as a judge presiding in a trial and deciding matters before the circuit court. Investigative Counsel alleged that Judge Ademiluyi engaged in a pattern of behavior in direct contravention of a judge's responsibility to promote confidence in the judiciary and maintain the dignity of judicial office.

Prior to charges being filed, the Commission had issued Judge Ademiluyi a "Letter of Cautionary Advice," advising her to comply with reasonable directives from judges with supervisory authority, to conduct designated dockets so the public was not negatively impacted, and to refrain from engaging in future sanctionable conduct. After the filing of charges, the Commission held a hearing. In findings of fact and conclusions of law, the Commission concluded that Judge Ademiluyi had engaged in sanctionable conduct that violated almost all of the MCJC provisions charged by Investigative Counsel. The Commission recommended that this Court censure Judge Ademiluyi and that she be suspended for six months without pay, with two consecutive months to be served immediately, followed by probation for one year with the conditions that Judge Ademiluyi be assigned a mentor judge and a "probation monitor"; undergo a healthcare evaluation; and attend and complete all Maryland Judiciary trainings, as well as any trainings designated by the Commission during the probationary period.

On May 6, 2024, after a hearing, this Court concluded that Judge Ademiluyi had

engaged in egregious misconduct and issued an order removing her from the office of Judge of the Circuit Court for Prince George's County. See Matter of Ademiluyi, 487 Md. 133, 134-35, 314 A.3d 1259, 1260 (2024). We explain in this opinion the reasons for that action.

## BACKGROUND

## Procedural History

On June 29, 2023, Investigative Counsel filed charges with the Commission, alleging that Judge Ademiluyi violated Maryland Rules 18-101.1 (Compliance with the Law), 18-101.2 (Promoting Confidence in the Judiciary), 18-102.1 (Giving Precedence to the Duties of Judicial Office), 18-102.2 (Impartiality and Fairness), 18-102.3 (Bias, Prejudice, and Harassment), 18-102.4 (External Influences on Judicial Conduct), 18-102.5 (Competence, Diligence, and Cooperation), 18-102.7 (Responsibility to Decide), 18-102.8(b) (Decorum, Demeanor, and Communication with Jurors), 18-102.9 (Ex Parte Communications), 18-102.11(a)(1), (a)(4), and (c) (Disqualification), 18-102.12(a) (Supervisory Duties), 18-102.16(a) (Cooperation with Disciplinary Authorities), 18-103.1 (Extra-Official Activities in General), and 18-104.4(a), (b), and (d) (Political Conduct of a Candidate for Election). Investigative Counsel alleged that Judge Ademiluyi had engaged in a pervasive and inappropriate course of conduct that could be summarized as: (1) the refusal to comply with directives, protocols, and procedures; (2) misconduct related to a criminal jury trial and criminal defendants generally; (3) the failure to maintain decorum and an appropriate demeanor; (4) misconduct as a candidate for election; and (5) lack of cooperation and candor with disciplinary authorities.

Judge Ademiluyi, through counsel, filed a response to the charges, denying that her conduct violated the MCJC. On December 13, 14, 20, and 21, 2023, the Commission held a public hearing on the charges. Judge Ademiluyi attended the hearing and was represented by counsel. The Commission admitted into evidence 104 exhibits offered by Investigative Counsel and heard testimony from 16 witnesses called by Investigative Counsel. The Commission admitted into evidence 14 exhibits offered by Judge Ademiluyi and heard testimony from 3 witnesses who testified on behalf of Judge Ademiluyi, including herself.

On February 15, 2024, the Commission issued a written decision setting forth findings of fact, conclusions of law, and recommended discipline. The Commission found by clear and convincing evidence that Judge Ademiluyi committed sanctionable conduct, as defined by Maryland Rule 18-402(m)(1). The Commission organized its findings into five categories of misconduct, which corresponded with the categories of misconduct set forth in the charges. The Commission found violations of multiple Maryland Rules in each of the categories and, in some categories, found violations of the same Rules. In total, the Commission concluded by clear and convincing evidence that Judge Ademiluyi violated the following Maryland Rules: 18-101.1, 18-101.2, 18-102.2(a), 18-102.3, 18-102.5, 18-102.8(b), 18-102.9, 18-102.11(a)(4) and (c), 18-102.16(a), and 18-104.4(a), (b), and (d). The Commission did not find clear and convincing evidence of violations of Maryland Rules 18-102.4, 18-102.7, 18-102.12(a), and 18-103.1.[3]

---

[3]Although the Commission mentioned a violation of Maryland Rule 18-102.11(a)(1) in the recommendation section of its opinion, in setting forth its conclusions of law, the Commission did not find a violation of that provision. In addition, the Commission did not make a finding with respect to a violation of Maryland Rule 18-102.1.

The Commission recommended that Judge Ademiluyi be censured, suspended without pay, and placed on probation with conditions, as follows:

> 1. The Censure of Judge April T. Ademiluyi as a Circuit Court Judge in Prince George's County Maryland for violations committed in [Commission Case No.] CJD 2022-079; and
>
> 2. Six (6) consecutive months' suspension from work without pay; two (2) consecutive months shall be served immediately. The remaining four (4) months shall be suspended subject to Judge Ademiluyi's compliance with the following conditions:
>
> > a. placement on, and successful completion of, one (1) year probation, to begin after completion of the above two (2) months suspension without pay;
> >
> > b. engagement and cooperation with a mentor judge assigned by the Supreme Court of Maryland or Commission who will provide monthly reports to the Commission;
> >
> > c. cooperation with a probation monitor assigned by [the] Supreme Court of Maryland or Commission who will report monthly to the Commission;
> >
> > d. submit to a health care evaluation, to be performed by a qualified health care professional(s) who is acceptable to the Commission and/or the Supreme Court, for a complete emotional, behavioral and prosocial assessment;
> >
> > e. fully cooperate in the health care evaluation and comply with the recommended course of treatment, including counselling, if any; and
> >
> > f. attend and timely complete any and all Maryland judiciary trainings as well as educational and ethics trainings designated by the Commission during the probationary period.[4]

---

[4]In proposed findings of fact and conclusions of law, Investigative Counsel recommended that Judge Ademiluyi be censured by this Court and suspended for three months, whereas Judge Ademiluyi recommended that the Commission find that no sanctionable conduct had occurred.

In accordance with Maryland Rule 18-435(c), the Commission referred the matter to this Court for final disposition. Judge Ademiluyi filed in this Court exceptions to the Commission's findings of fact, conclusions of law, and recommendations and a memorandum of law in support of the exceptions. The Commission filed a response to the exceptions. Pursuant to Maryland Rule 18-437(e), on May 6, 2024, we held a hearing on Judge Ademiluyi's exceptions.[5]

## The Commission's Findings of Fact

We summarize below the Commission's findings of fact in chronological order, for the most part, under subheadings identifying the subject matter of each section of the summary.

### *Campaign Activity*

In 2020, Judge Ademiluyi, then an attorney, successfully ran for judicial election. During the campaign, Judge Ademiluyi distributed a campaign video that used the slogan "Justice is Ours" in which she detailed her personal experience as a survivor of sexual assault and promised if elected to give a voice to sexual assault survivors and the Me Too movement. The Commission's findings include the following transcript of Judge Ademiluyi's campaign video:

> Hi, I'm attorney April Ademiluyi and I'm running for judge
> I never thought that I would be one of these
> Eight years ago in Florida I was drugged and raped by my peers in the legal

---

[5]At the hearing, the Commission withdrew the request that Judge Ademiluyi be censured as Maryland Rule 18-402(c) provides that "'[c]ensure' means a formal public sanction by the Supreme Court based on a finding that the judge committed sanctionable conduct that justifies more than a reprimand but was not so egregious as to justify suspension or removal."

system
Multiple women were targeted and drugged in a room filled with lawyers and judges and I was one of them
The violence was bold
I never thought, I never thought
But now it's me too
And just like many of you the system tried to break me
Campaign donations stacked the prosecutor against me
Case evidence was fabricated and destroyed to protect multiple rapists
I had no money
Lawyers I trusted were too afraid to assist
But I still fought them all with a lawsuit
When my case went before judges
Corruption and abuse of power reigned supreme once again
But I continued to fight for justice
And I would not be silenced and I would do the same for you
Women need more than a movement
People need more than protests in the streets
We need power, a judge's power
I know the legal system
Give us power and justice is ours
Vote
As a judge I would have the power to help you too
Give me the power to protect women, Protect the disenfranchised
Give me power to protect those in need, protect those who have no voice
I will work to end the pipeline to prison for the young in our country
Give us power then justice is ours
Vote
I will prove justice is blind when holding all accountable for their actions
In my courtroom, status and wealth will not prevail against the law
I was drugged and raped by lawyers who feared no retribution from me being educated and a lawyer
As a judge, I would work to make sure that no one has to fear or distrust law enforcement in our communities at any time or place
I will stand for Me Too and all of you
I have the right experience practicing law
I know the system
I know how to make it work for all of us
I am Attorney April Ademiluyi
I am running for judge
Justice is ours
Vote!

(Italics omitted).

On April 20, 2020, in a campaign-related blog post, Judge Ademiluyi made the following statements:

> The month of April is sexual assault awareness month, so I want to share my painful story and encourage other survivors to never allow the justice system or society to silence you.
>
> I will do my best to summarize years of abuse I endured from police, prosecutors, and judges who literally put the justice system up for sale to rapists. . .
>
> THE POLICE AND PROSECUTORS DESTROY AND FABRICATE EVIDENCE TO COVER UP THE DRUG RAPES. . .
>
> **JUSTICE IS OURS**
> Take a moment for me to show you why Justice Is Ours in Prince George's County.
> Copyright © 2020 Vote April Judge- All Rights Reserved.

(Emphasis and ellipses in original).

### *Orientation/Training*

In the November 2020 General Election, Judge Ademiluyi was elected to the office of Associate Judge of the Circuit Court of Prince George's County. In December 2020, the Honorable Sheila R. Tillerson Adams, then the Chief Judge and Administrative Judge of the Seventh Judicial Circuit and the Circuit Court for Prince George's County, issued an administrative order appointing a New Judge Orientation Committee ("the Committee") to conduct training for the newly elected members of the Circuit Court for Prince George's County, Judge Ademiluyi and the Honorable Gladys M. Weatherspoon. The Honorable Judy L. Woodall was designated Chair of the Committee. In addition to Judge Woodall, the Committee consisted of the following judges: the Honorable Michael R. Pearson, the

- 8 -

Honorable John P. Davey, the Honorable DaNeeka Varner Cotton, and the Honorable Lisa A. Hall Johnson, who was the District Administrative Judge of the District Court of Maryland, Fifth Judicial District. According to the administrative order, Judge Ademiluyi's orientation was to begin on December 21, 2020.[6] At the conclusion of the orientation, Judge Woodall was to submit a written report to Judge Tillerson Adams certifying that the new judges were officially released from orientation. Judge Woodall was directed to ensure that the new judges were exposed to "a variety of case types in the Circuit Court, including, but not limited to civil, family, foreclosure, criminal (jury and non-jury cases), as well as different judicial styles and demeanors."

In emails on January 3, 2021, Judge Woodall provided an orientation schedule to Judge Ademiluyi. For hearings or trials, Judge Ademiluyi was to sit with a designated "training judge." According to testimony at the disciplinary hearing from Judge Tillerson Adams, Judge Woodall, and Judge Davey, this was a two-step process that first involved Judge Ademiluyi sitting with a training judge as the judge presided over a case. Afterward, Judge Ademiluyi was to preside over a similar type of matter while being observed by the training judge. The case would be assigned by Judge Tillerson Adams to the training judge, who was to retain responsibility for the matter and was expected to sign any orders arising from the proceedings.

---

[6]Judge Ademiluyi was sworn in as an Associate Judge of the Circuit Court for Prince George's County on December 18, 2020. Due to the COVID-19 emergency, when Judge Ademiluyi was sworn in as a judge in December 2020, cases were being heard remotely, no jury trials were being held, and courthouse operations were staggered with limited staff present each day to allow social distancing.

Judge Woodall encountered difficulties almost immediately with Judge Ademiluyi's compliance with the orientation program. Email exchanges between Judges Ademiluyi and Woodall in January and February 2021 show that Judge Ademiluyi either failed to timely report to a hearing or a program or failed to report to the courthouse on assigned training days and show attempts by Judge Woodall to address these issues with Judge Ademiluyi. Judge Woodall eventually contacted Judge Tillerson Adams for help in securing Judge Ademiluyi's cooperation. In an email on February 23, 2021, on which she copied Judge Woodall, Judge Ademiluyi advised Judge Tillerson Adams that Judge Woodall's schedules were confusing and that some schedules had been sent to her personal email address. In an email to Judges Tillerson Adams and Ademiluyi the following day, Judge Woodall responded that the orientation schedule and emails had clearly designated the times and days that Judge Ademiluyi was expected to report to the courthouse. The Commission found that the schedules at issue appeared to have been sent to Judge Ademiluyi's official email address and that Judge Ademiluyi acknowledged during her testimony at the disciplinary hearing that she would have been able to attend meetings for which invitations had been sent to her personal email address.

The Commission found that, after the February 23 and 24, 2021 email exchanges, Judge Tillerson Adams continued to receive complaints about Judge Ademiluyi's attendance and failure to report as assigned, and Judge Ademiluyi's tardiness became a habitual issue. Judge Ademiluyi's text messages to her staff demonstrated issues with tardiness, as in some instances she directed her staff in text messages to inform parties that

a matter would start late or that she was on her way to the courthouse.[7]  In addition, Judge Ademiluyi continued to "push back" against the training program.  Judge Ademiluyi repeatedly questioned the length and content of the training program, the decisions of the Chair of the Committee, and Judge Tillerson Adams's authority to run the program.  Judge Ademiluyi also complained about the training to Judge Weatherspoon and the Honorable Makeba Gibbs of the Circuit Court for Charles County, who were in training with her.

Notwithstanding issues with Judge Ademiluyi's compliance, on March 26, 2021, Judge Woodall submitted a report to Judge Tillerson Adams certifying that Judge Ademiluyi had partially completed orientation, except for having observed civil and criminal jury trials.  On the same day, Judge Tillerson Adams signed the report, confirming that Judge Ademiluyi had completed the training necessary to assume the duties of a circuit court judge with the exception of civil and criminal jury trials.

After having certified that the orientation program was partially complete, Judge Tillerson Adams continued to experience problems with Judge Ademiluyi's attendance and punctuality.  On October 12, 2021, Judge Tillerson Adams contacted Judge Ademiluyi about a hearing that was to be conducted remotely that day before a three-judge panel, which was scheduled to begin at 9:00 a.m., noting that Judge Ademiluyi had not joined the hearing until 9:30 a.m.  Judge Tillerson Adams told Judge Ademiluyi that an "alleged

---

[7]On February 22, 2022, Judge Ademiluyi texted her staff concerning the parties to a matter scheduled before her, stating: "Let them wait."  Judge Ademiluyi also chastised her staff when they contacted her while she was on leave, telling them that "[t]here are no emergencies" while she is on leave and that she "pick[s] and choose[s] what [she] want[s] to do."

technical delay" that her staff had reported at 9:20 a.m. and her failure to appear until 9:30 a.m. were unacceptable. (Brackets omitted). Judge Ademiluyi testified at the disciplinary hearing that she had technical difficulties accessing the remote hearing, but also acknowledged that she had texted her staff at 9:06 a.m. that morning to tell them that she was "actually [] walking up now[,]" *i.e.*, arriving at the courthouse.

By November 1, 2021, Judge Davey had replaced Judge Woodall as Chair of the Committee and was responsible for scheduling Judge Ademiluyi's jury trial training. Judge Davey invited Judge Ademiluyi to meet with him and began attempting to develop a schedule for her participation in jury trials. In an email dated November 23, 2021, Judge Davey advised Judge Ademiluyi of the contemplated schedule and asked her to clear her December 2021 calendar for training. Judge Ademiluyi responded by questioning the need to observe the complete selection of a jury in a criminal case. Judge Davey replied, stating that "criminal jury selection is the most difficult and complex." Judge Ademiluyi responded: "It's not that complicated but everyone makes mistakes. Is there an issue you struggle with that I should pay close attention to?"

After taking into account Judge Ademiluyi's scheduled docket and leave, Judge Davey was ultimately unable to schedule any criminal jury trials for Judge Ademiluyi in December and asked Judge Ademiluyi to clear her calendar for January 2022. In the meantime, due to the COVID-19 emergency, jury trials were suspended until March 7, 2022.

*Interactions with Staff and Colleagues*

From December 2020 to June 19, 2021, Jessica Ochoa worked as a law clerk for

- 12 -

Judge Ademiluyi. The Commission found that Judge Ademiluyi was, during that time, demanding, demeaning, and belittling to Ms. Ochoa. The Commission found that Judge Ademiluyi "referred to Ms. Ochoa as incompetent[ and] lazy and sent many emails with demands outside of work hours."[8]

Linda Randall, Judge Ademiluyi's first executive administrative aide, had worked with the Honorable Beverly J. Woodard until her retirement prior to working with Judge Ademiluyi. The Commission found that Judge Ademiluyi "vaguely yet repeatedly appeared to threaten Ms. Randall's employment, both in discussions and over email." On Friday, January 22, 2021, at 10:06 p.m., Judge Ademiluyi emailed Ms. Randall and Ms. Ochoa, stating, among other things, that she expected them both to allow her "to lead and accept how [she] cho[]se to run [her] chambers." Ms. Randall responded to Judge Ademiluyi that night stating that she supported "however [Judge Ademiluyi] wanted to run [her] chambers to ensure her success as a Circuit Court judge" and that she was "happy to be part of Team Ademiluyi[.]"

On Saturday, January 23, 2021, at 11:40 a.m., Judge Ademiluyi responded as follows to Ms. Randall:

> I'm not sure you do support how I wish to run my chambers. I thought you would be an amazing assistant because your experience would save me a lot of time. And perhaps you will be great but so far you're starting to worry me. I can't guarantee you that I will want you to handle tasks the way you are accustomed to handling tasks with Judge Woodard. Most importantly, I

---

[8]In emails in May 2021 to Ms. Ochoa, Judge Ademiluyi described her writing as "typically disorganized[,]" accused Ms. Ochoa of "lack of sufficient effort[,]" stated that Ms. Ochoa was "still failing in effort[,]" and told Ms. Ochoa: "Stop responding to me with your excuses and do what I ask you to do!" In a text message to Ms. Ochoa, Judge Ademiluyi stated of her work that "[i]t's typical of your lack of effort[.]"

- 13 -

don't want to waste time on you challenging me or refusing to do what I ask simply because it's not how Judge Woodard handles things. I know you've been with her a long time so my chambers may be difficult but yet a very doable adjustment for you. Next week, we will talk more about my expectations and whether you can handle them. Enjoy the weekend!

Shortly thereafter, Judge Ademiluyi unexpectedly told Ms. Randall that they were "not a good fit." Ms. Randall thought she had been hired for a long-term position, but Judge Ademiluyi told her that they were not compatible and advised her to start looking for other opportunities. Due to a hiring freeze by the Maryland Judiciary and Prince George's County, Ms. Randall asked to keep her job while she looked for other employment. Ten days later, however, in an email on Sunday, February 21, 2021, Judge Ademiluyi suddenly terminated Ms. Randall's employment.

Sarah Higgs was Judge Ademiluyi's second executive administrative aide. Judge Ademiluyi made disparaging remarks about Ms. Higgs to Ms. Ochoa, referring to Ms. Higgs as unwell and in need of "mental help." Judge Ademiluyi criticized and belittled Ms. Higgs in front of and to Ms. Ochoa. When Ms. Higgs resigned (for a second time), Judge Ademiluyi forwarded to Ms. Ochoa the resignation notice that Ms. Higgs had sent to Human Resources, commenting: "We knew she would run."

In early May 2021, Ms. Ochoa contacted Judge Tillerson Adams about Judge Ademiluyi's conduct. Ms. Ochoa advised Judge Tillerson Adams that she had received medical attention due to anxiety she experienced working for Judge Ademiluyi. On May 25, 2021, Ms. Ochoa notified Judge Ademiluyi of her intent to resign effective June 16, 2021. Judge Ademiluyi requested, and Ms. Ochoa agreed, that Ms. Ochoa's last day would be June 29, 2021. Judge Ademiluyi remarked that it would be a smooth transition because

most of what Ms. Ochoa did was "simply paralegal work." The Commission found that Judge Ademiluyi continued to degrade and belittle Ms. Ochoa, and told her, among other things, that she would save complicated or time-consuming work for the "well qualified" new law clerk to handle and that she would pass on only issues she thought Ms. Ochoa could "handle[.]"

On Saturday, June 19, 2021, after Ms. Ochoa had worked on an assignment the previous day, which was a court holiday, by email, Judge Ademiluyi notified her to report to work on Monday and to bring her laptop. Judge Ademiluyi instructed Ms. Ochoa that on Monday she was to retrieve the week's files from the Clerk's Office and draft two orders. Judge Ademiluyi advised Ms. Ochoa that once she completed the tasks, her employment would be terminated. In the June 19, 2021 email, Judge Ademiluyi stated: "You've shown you're not motivated to work for the circuit court so you're [sic] work ethic will always be poor. . . . We will terminate your position on Monday. I don't need you anymore. You're finally at the end of the position!" (Brackets in original). Ms. Ochoa responded that she resigned, effective immediately. Judge Ademiluyi replied: "You're [sic] effort was poor and you didn't finish all that I requested. Yes, I am very happy for you to end your employment immediately." (Brackets in original).

On the same day, Judge Ademiluyi emailed Jennifer Ventola of the Maryland Judiciary Human Resources Department and advised that Ms. Ochoa was not qualified to work as a judicial law clerk. Ms. Ventola was concerned by the comment and the circumstance that Ms. Ochoa's termination notice had been sent on a Saturday, so she forwarded the exchange to her then-supervisor, Ebonye Caldwell, who is now the Assistant

State Court Administrator of Human Resources. The Commission found that Judge Ademiluyi told "Ms. Caldwell to process Ms. Ochoa's resignation as improper notice with no ability for rehire, stating that the resignation was not done in good standing and that Ms. Ochoa refused to carry out her duties as Law Clerk."

Next, Judge Ademiluyi attempted to prevent Ms. Ochoa from retrieving her personal belongings from the courthouse. Judge Tillerson Adams intervened to facilitate the process after Ms. Ochoa advised her that she was "fearful of continuing contact" with Judge Ademiluyi. At the disciplinary hearing, Ms. Ochoa testified that Judge Ademiluyi also refused to approve paying her for the time she spent working on the court holiday.

The Commission found that Judge Ademiluyi's email exchanges and text messages demonstrated a "lack of patience, dignity, and courtesy toward staff and court personnel." In text messages to her law clerk, Judge Ademiluyi referred to Monet Hurey, her courtroom clerk, as "pushy[.]" Also, on one occasion, Judge Ademiluyi told Ms. Hurey directly: "You told me I could keep you in the courtroom until 5pm yesterday but you were complaining? I had warrants yesterday and a busy docket—it was a rough day for me NOT you!"[9]

In emails and text messages, after Ms. Higgs's initial resignation in March 2021, Judge Ademiluyi stated that Ms. Higgs should "appease her concerns that some of those evil people in that courthouse didn't scare you off[.]" (Brackets omitted). In text messages to Ms. Ochoa on March 7, 2021 and a different law clerk on June 28, 2021, Judge

---

[9]At the disciplinary hearing, Ms. Hurey testified on Judge Ademiluyi's behalf that the exchange involved a miscommunication about her part-time job, which was resolved with Judge Ademiluyi.

Ademiluyi stated, respectively: "Expect dysfunction"; and "Yes[,] always expect total dysfunction in this court!" On August 17, 2021, in a text message to a law clerk, Judge Ademiluyi stated that she thought Judge Tillerson Adams would permit her to work from home, "but you know how complicated she is[.]" On October 15, 2021, in a text message to a law clerk, Judge Ademiluyi commented: "You know how crazy these judges are[.]"

On November 29, 2021, in an email to her administrative aide, which contained a draft letter of recommendation for someone else, Judge Ademiluyi stated: "You can never say too much about what goes on in a judge's chambers. We obviously can't talk about the corruption!"[10] On January 3, 2022, in a text message to her executive administrative aide, Judge Ademiluyi commented that she had "a nice break from all the crazy judges!!!" On March 21, 2022, in an email to her law clerk, Judge Ademiluyi stated: "This is so annoying, ineffective, and inefficient having to work with another judge, and for some reason they think they're training me."

On May 2, 2022, in a text message to her law clerk, Judge Ademiluyi stated: "This letter is a response to [Judge Tillerson Adams's] email asking me to give up my leave to do her jury trial training. I wanted to curse at her but this letter is best!" On July 18, 2022, in an email to her law clerk, Judge Ademiluyi forwarded an email from Judge Tillerson Adams and stated: "Look at her behaving like nothing ever happened. This is what happens

---

[10]Although the Commission's findings of fact do not identify the administrative assistant or the person for whom the letter of recommendation was intended, an email admitted into evidence as Exhibit IC82 confirms that on November 29, 2021, Judge Ademiluyi sent a member of her staff an email containing the language quoted above and a draft recommendation letter for a person who was applying to law school.

when power destroys your humanity and humility assuming she actually had any.  Her obsession with me is literally making me sick[.]"

On August 5, 2022, in a text message to her law clerk, Judge Ademiluyi stated: "[W]e must always be cautious with the judges.  We can't trust them. . . I will text you anything I don't feel comfortable putting on email."  (Ellipsis in original).  And, on August 21, 2022, in an email to her law clerk, Judge Ademiluyi stated: "As you are beginning to see, the judges here are a total disservice to the people.  Just stay calm, don't trust anyone, and try to ignore any foolishness!"

### *Letter of Cautionary Advice, Letter from Chief Justice Fader, and Orientation/Training Thereafter*

On January 5, 2022, the Commission issued a "Letter of Cautionary Advice" to Judge Ademiluyi.  The letter documented findings by the Commission that Judge Ademiluyi had failed to perform judicial duties, failed to comply with a reasonable directive from a judge with supervisory authority, and failed to cooperate with a judge with supervisory authority in attempts to communicate with her.  As a result of these findings, the Commission cautioned Judge Ademiluyi to comply with reasonable directives from judges with supervisory authority and to conduct designated dockets so that the public would not be negatively affected.  The Commission admonished Judge Ademiluyi as follows:

> Judge April T. Ademiluyi is cautioned to comply with reasonable directives from judges with supervisory authority.  If there are concerns regarding directives or internal issues, they should be communicated timely to the Administrative Judge; a judge may seek out assistance at the Office of Fair Practices, if applicable and necessary. Judge April T. Ademiluyi is cautioned to conduct designated dockets so that the public is not negatively affected.

Judge April T. Ademiluyi is encouraged to take advantage of all mentorship opportunities for new judges. You are hereby advised against future sanctionable conduct, as defined in Maryland Rule 18-402(m).

The Commission advised that, pursuant to Maryland Rule 18-425(b)(3), the Letter of Cautionary Advice could be considered, if relevant, in any subsequent proceedings against Judge Ademiluyi.[11]

After receipt of the Letter of Cautionary Advice, Judge Ademiluyi continued to question the requirement that she observe the criminal jury selection process, despite acknowledging that she had not done so. On March 14, 2022, two months after receiving the Letter of Cautionary Advice and one week after jury trials had resumed, Judge Ademiluyi sent an email to Judge Davey, stating:

> I don't need any more judges observing and giving me feedback, while I preside over a jury trial. . . . [Judge Tillerson] Adams enrolled me in a jury selection course, which wasn't the course I needed but this is more than enough jury trial training. Are we finished the jury trial training? Or are we going to continue to unnecessarily drag this out?

Later on the same day, Judge Ademiluyi sent an email with almost identical language to Judge Tillerson Adams, who responded that they would talk. Judge Davey responded by detailing the issues that to date had prevented scheduling Judge Ademiluyi's

---

[11]In its findings of fact, the Commission determined that, at the time that she received the letter, Judge Ademiluyi had not completed the training for new judges required by an Administrative Order issued in August 2016 by the Honorable Mary Ellen Barbera, then the Chief Judge of this Court. The Administrative Order required that, at a minimum, one week of the orientation period be dedicated to the new trial judge sitting in on court proceedings and that the period include both observation of other judges and the new trial judge handling proceedings with the feedback or assistance from other judges, as appropriate. Each county or circuit administrative judge was required to ensure compliance with the procedures set forth in the Administrative Order as to the orientation and mentoring of each new trial judge in the administrative judge's jurisdiction.

jury trial training. Judge Davey stated that, although the Committee was "eager" for Judge Ademiluyi to complete her training, it could not recommend that her training end until she completed a civil and criminal jury trial. Judge Ademiluyi replied to Judge Tillerson Adams as follows: "I see from Judge Davey's email that the committee has not and will likely never provide a recommendation to you. Are you refusing to end this training and assign me jury trials unless this committee provides a recommendation to you to end the training?"

On March 22, 2022, Judge Davey scheduled Judge Ademiluyi to sit with him as the training judge in two civil jury selections on March 23, 2022. Judge Ademiluyi responded by complaining about not being assigned a criminal trial and stated: "I'll go to the courtroom[,] but I don't need you there." Judge Davey explained that the requirement was that they both be present in the courtroom and that if Judge Ademiluyi wanted to do something different, she should speak with Judge Tillerson Adams. On March 22, 2022, Judge Ademiluyi sent an email to Judge Tillerson Adams, stating:

> You said the requirements that you impose on each new judge is that another judge must sit with them on one civil and one criminal jury trial. I have only completed one civil jury trial but I still have not completed the criminal jury trial. Tomorrow, I am scheduled to sit with [J]udge Davey for civil jury selection. Why is this necessary? Why can't you find an efficient solution to complete this training you allege you impose on all new judges? . . . Judge Davey can provide me advice during the proceeding but I am not obligated to use his advice[.]

In an email to Judge Davey on the morning of March 23, 2022, Judge Ademiluyi again questioned the need to conduct civil jury trial training and Judge Tillerson Adams's authority to establish the training program, and she told Judge Davey that she was "not

- 20 -

interested in [his] advice throughout the course of the proceeding or anytime concerning any case."

Judge Davey cancelled the training and provided a copy of the email exchange to Judge Tillerson Adams. In a memorandum on behalf of the Committee, Judge Davey advised that the Committee had tried to complete Judge Ademiluyi's jury trial training but had "not received the necessary and appropriate cooperation from" Judge Ademiluyi and that it could not complete the training without her cooperation. On March 23, 2022, in an email to Judges Tillerson Adams and Davey, referring to Chief Judge Barbera's August 2016 Administrative Order, Judge Ademiluyi stated: "Judge Tillerson Adams' version of the new judge orientation runs afoul to many provisions of that order, and she seems to be the only administrative judge who doesn't care to comply with that order, which is not at all surprising given her character."[12]

The Commission found that, in March 2022, Judge Ademiluyi also failed to cooperate with the Honorable Robin D. Gill Bright, who was assigned to observe as the training judge when Judge Ademiluyi presided over jury selection in a civil case. In a report submitted to Judge Tillerson Adams as part of the training program, Judge Gill Bright advised that, on their second training date, Judge Ademiluyi arrived over an hour late, was unprepared, refused to sit in the courtroom with her as required by training protocol, and did not meet with her as requested to discuss the training. In its findings, the Commission referenced Exhibit IC48, which is a memorandum from Judge Gill Bright to

---

[12]Judge Ademiluyi also copied Judge Tillerson Adams's executive administrative assistant on the email.

Judge Tillerson Adams that provides the details underlying the Commission's findings.[13]

At the disciplinary hearing, Judges Tillerson Adams and Davey testified that Judge Ademiluyi's leave schedule interfered with the ability to assign her criminal jury trials during training because juries were selected on Mondays and, beginning in April 2021, Judge Ademiluyi routinely used leave on every Monday throughout the year. On March 30, 2022, Judge Tillerson Adams advised Judge Ademiluyi that ten criminal jury trials were scheduled for Monday, April 4, 2022, and that she could be assigned to one for training on criminal jury trials if she were to "give back" her leave for that Monday. Judge Ademiluyi did not respond before April 4, 2022.

Instead, on May 6, 2022, Judge Ademiluyi replied to Judge Tillerson Adams's March 30, 2022 email with a memorandum setting forth her belief that Judge Tillerson

---

[13]In the memorandum, Judge Gill Bright advised that she was assigned to observe Judge Ademiluyi on March 10, 2022, in the virtual selection of juries in two civil trials, one at 9:00 a.m. and the other at 1:30 p.m. That morning, the jury panel was scheduled to check in at 8:30 a.m. and by approximately 8:45 a.m., everyone was present except for Judge Ademiluyi. At 9:30 a.m., Judge Ademiluyi's executive aide advised Judge Gill Bright that Judge Ademiluyi had just arrived. After a brief wait, Judges Gill Bright and Ademiluyi went to the courtroom. Judge Ademiluyi told Judge Gill Bright that she was having problems with the computer and would conduct jury selection in her chambers. Judge Gill Bright reminded her that she needed to be in the courtroom and that two screens were needed for discussions with individual jurors. Judge Ademiluyi left the courtroom and did not plan to return. Judge Ademiluyi also had not prepared *voir dire*, as Judge Gill Bright had requested.

During the second jury selection, Judge Ademiluyi informed the plaintiff that a judge had granted a default judgment, stated the amount awarded, displayed a piece of paper, and advised that it was the order signed by the judge. According to Judge Gill Bright, the next morning, she learned that the order signed by the judge actually denied the request for a default judgment, as indicated by a stamped "denied" on the order. Judge Gill Bright went to Judge Ademiluyi's chambers to discuss the matter, but her aide said she was on the phone and unavailable. Judge Gill Bright requested that Judge Ademiluyi contact her when she finished, but Judge Ademiluyi did not do so.

Adams did not have authority to administer the training program. Judge Ademiluyi did not offer to rescind any scheduled leave. Judge Tillerson Adams responded by stating that there were many cases scheduled and there should be no difficulty in getting Judge Ademiluyi "a couple of trials" so that the training could be scheduled. Judge Tillerson Adams also advised Judge Ademiluyi that she had scheduled her "for training on the next Criminal Appeal Monday that [she was] not previously scheduled on leave."

Judge Ademiluyi forwarded to the Honorable Matthew J. Fader, Chief Justice of the Supreme Court of Maryland, her May 6, 2022 memorandum and Judge Tillerson Adams's response. On May 12, 2022, Chief Justice Fader responded to Judge Ademiluyi, stating:

> [I]t appears that you have not taken the opportunity to complete the jury trial training expected of new judges in the Circuit Court for Prince George's County. From that correspondence, it appears that opportunities for the completion of that training by sitting on criminal jury trials with experienced judges are available to you if you are willing to come to the courthouse on Mondays when criminal jury trials are scheduled to begin. It is of vital importance that judges receive appropriate training before presiding over jury trials. I trust that you will complete that training in the near future.

On May 24, 2022, Judge Ademiluyi advised Judge Tillerson Adams that she would give up her previously scheduled leave for Monday, June 6, 2022.

### *Lambright Trial, Bias Against Defendants in Criminal Cases, and Other Matters*

Judge Ademiluyi was promptly assigned to sit with the Honorable Cathy H. Serrette for a criminal jury trial in State of Maryland v. Carlos Antonio Lambright, No. CT210423X (Cir. Ct. Prince George's Cnty.), which began on June 6, 2022.[14] Mr. Lambright had been

---

[14]At the disciplinary hearing, Judge Serrette testified that she has served as an Associate Judge on the Circuit Court for Prince George's County since December 2003,

charged with first-degree rape, assault, and other offenses.[15]

The Commission described the events concerning the <u>Lambright</u> trial as follows. One of the State's witnesses was Rebekah Solomon, a nurse who performed a sexual assault forensic examination of the alleged victim. During Ms. Solomon's direct examination, the State offered into evidence photographs taken with a Cortexflo camera,[16] which was purported to be a camera that could show marks from strangulation not visible to the naked eye. Mr. Lambright's counsel objected to admission of the photos on several grounds, including that the State had failed to disclose during discovery that a Cortexflo camera was used and that the Cortexflo camera's technology was based on a novel scientific principle that was not generally accepted. After hearing argument and conferring with Judge Serrette, Judge Ademiluyi sustained Mr. Lambright's counsel's objection, ruling that the Cortexflo camera involved "a novel technique [] used to detect bruises and other issues on the skin in domestic violence cases[,]" that she could not assess its reliability

---

has presided over many criminal trials and, although not on the Committee, has sat with new judges on various cases.

[15]Before the start of the trial, Judge Serrette discussed with Judge Ademiluyi whether she should recuse herself from participation in the <u>Lambright</u> trial, given the issues that Judge Ademiluyi raised during her 2020 judicial campaign. Judge Ademiluyi told Judge Serrette that she "was comfortable presiding over the trial." Judge Ademiluyi did not recuse herself from the case or disclose to the parties any of the statements she made concerning rape and sexual assault in her campaign video and blog post.

[16]Cortexflo is photographic technology designed for use in forensic medical examinations. <u>See</u> Cortexflo, <u>Cortexflo</u>, https://cortexflo.com/ [https://perma.cc/4JV5-DDPX]. A Cortexflo camera can purportedly detect traces of "saliva, sweat[,] and urine on a range of surfaces[,]" enabling "Cortexflo to acquire additional categories of evidence necessary to complete a full forensic medical examination." <u>Id.</u>

without a Daubert hearing,[17] and that, because the matter was brought up too late, there was no time for a hearing. As such, Judge Ademiluyi ruled that the photographs would not be admitted. After the ruling, Ms. Solomon's testimony concluded, and the State called its next witness. Neither party requested reconsideration of the ruling.

That night, Thursday, June 9, 2022, Judge Ademiluyi conducted her own research about the photographs she had declined to admit into evidence. Judge Ademiluyi found an unpublished opinion from Tennessee[18] and emailed it to her staff, saying of the case that "forensic lighting was used to show bruising under the skin on the neck in a rape case in 2011" and that the "case does not discuss admissibility but it clearly shows that it[']s not a novel technique." (Brackets omitted). Judge Ademiluyi instructed her staff to provide the case to counsel and to tell counsel "to be prepared to address th[e] issue again."

The following day, Friday, June 10, 2022, in the courtroom, Judge Ademiluyi revisited the admissibility of the photographs taken with the Cortexflo camera and brought up the unpublished opinion from Tennessee that she had located. After hearing argument from counsel, Judge Ademiluyi affirmed her earlier ruling excluding admission of the photographs. The State rested.

During the defendant's case, Mr. Lambright testified on his own behalf and denied having raped or assaulted the alleged victim. Judge Ademiluyi reviewed the verdict sheet

---

[17]In Rochkind v. Stevenson, 471 Md. 1, 5, 236 A.3d 630, 633 (2020), this Court adopted the standards for admissibility of expert opinions set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-94 (1993).

[18]The opinion was Sellers v. State, No. W2016-01776-CCA-R3-PC, 2017 WL 1907724 (Tenn. Crim. App. May 9, 2017) (unpublished).

with the parties and adjourned for the day. Neither party requested that Judge Ademiluyi again revisit her ruling that the photographs were not admissible.

That evening, Judge Ademiluyi continued researching the Cortexflo camera and emailed her law clerk: "I can take judicial notice sua sponte of the publications that show the camera is widely known and used. I need all the scientific publications you found on it." The next morning, Saturday, June 11, 2022, Judge Ademiluyi's law clerk responded with information she found overnight. The law clerk indicated that, according to a journal article she had located, the technology that the Cortexflo camera uses appears to be old. The law clerk advised that, according to another paper, the Cortexflo camera "takes a regular picture and then digitally alters it."

On Monday, June 13, 2022, without Judge Serrette present in the courtroom, Judge Ademiluyi took the bench and ordered that the trial be suspended and a <u>Daubert</u> hearing be scheduled regarding the photographs taken with the Cortexflo camera. As Judge Ademiluyi was explaining her ruling, Judge Serrette entered the courtroom. Judge Ademiluyi explained her research about Cortexflo technology and appeared to refer to the unpublished opinion from Tennessee that she had located. Judge Ademiluyi stated: "The Court now takes this opportunity to clarify to Counsel that the Court has the authority to do its own research and to sua sponte provide evidentiary rulings." Judge Ademiluyi concluded by stating that "[t]he court has no bias in favor or against either party" and that, "to ensure a fair trial, the Court must suspend the trial and hold a *Daubert* hearing." Judge Ademiluyi decided to revisit the admissibility of the photographs during the defense's case, after the defendant had testified, and before the State started its rebuttal case.

The Commission found that "Judge Serrette believed Judge Ademiluyi's decision to revisit the admissibility of the photographs after Mr. Lambright had testified but before the State raised the matter on rebuttal was prejudicial, inappropriate, violative of Mr. Lambright's rights, and gave the appearance of partiality." The Commission noted that Judge Serrette's and Judge Ademiluyi's testimony at the disciplinary hearing differed as to whether Judge Ademiluyi refused to discuss the matter of revisiting admissibility of the photographs with Judge Serrette. The Commission found Judge Serrette's testimony on the point credible. Judge Serrette testified that she had attempted to talk with Judge Ademiluyi about the matter and explain her concerns, but that Judge Ademiluyi told her that "she did not need or want her advice and she viewed Judge Serrette merely as a resource she no longer intended to use."

The Commission found Judge Ademiluyi's testimony on the matter to be "evasive." When asked if she had discussed the matter with Judge Serrette, Judge Ademiluyi testified that she did not recall doing so, but stated that she had discussed it with the Honorable Carol A. Coderre, although she had admitted in a deposition that she did not talk with Judge Coderre until after she made her "ruling and decided to change it." When asked whether she had been assigned to train with Judge Serrette, Judge Ademiluyi stated that she and Judge Serrette were sitting together but that all of the judges trained her. Eventually, however, Judge Ademiluyi admitted that Judge Serrette was assigned to be the training judge and that she had not discussed the admissibility issue with Judge Serrette.

On June 13, 2022, when Judge Ademiluyi ordered the trial suspended for a Daubert hearing, neither party had requested a hearing or was prepared for it. When asked whether

the State was prepared to move forward with a <u>Daubert</u> hearing, the prosecutor responded: "No" because she "had no idea this was coming." Mr. Lambright's counsel objected to the court "injecting" itself "as a party to the case" and argued:

> Obviously, to say that this is not biased, flies in the face of what we just heard about doing the research to try to support the State's evidence. And no motion has or is pending, as such, both parties are again surprised that there has been a legal argument that we have to be prepared for. So obviously I object to this entire event – these entire proceedings and the Court's injecting themselves biasly into my client's case.

Judge Ademiluyi scheduled the <u>Daubert</u> hearing for June 21, 2022.

Later the same day, Judge Serrette sent a memorandum to Judge Tillerson Adams outlining her concerns about the trial and Judge Ademiluyi's lack of cooperation. Judge Tillerson Adams assigned the <u>Lambright</u> case solely to Judge Ademiluyi and requested that Judge Ademiluyi meet with her after the trial was over to debrief.

On Tuesday, June 14, 2022, Judge Ademiluyi continued to research the Cortexflo camera. Judge Ademiluyi emailed Saran Myers-Martin, the Deputy Director of the Prince George's County Family Justice Center ("the FJC"), asking to speak with her. The two spoke, and Judge Ademiluyi requested information about the Cortexflo camera used by the FJC. At a deposition, Judge Ademiluyi testified that she asked the FJC for a presentation it had given to new trial judges so she could give it to the trial judges. Within a few hours of speaking with Judge Ademiluyi, Ms. Myers-Martin emailed her "literature" that explained the Cortexflo camera's technology and features and sample photographs taken by a manager at the FJC who was familiar with the camera.

On June 16, 2022, the Committee issued a memorandum to Judge Tillerson Adams

advising that the Committee could not certify Judge Ademiluyi to conduct jury trials. The Committee stated:

> [Judge Ademiluyi] has asserted that she can conduct jury trials without further training. We have been informed that she does not accept any advice or counsel from designated training judges nor is she willing to consult with or defer to the designated training judge before making critical evidentiary rulings. These actions place the training judge in the detrimental position of being subject to a reversal by an Appella[te] Court while having no input into the ruling. The Committee does not want to place training judges in that position therefore, we cannot complete the training process.

After receiving the June 16, 2022 memorandum from the Committee, Judge Tillerson Adams took responsibility for Judge Ademiluyi's training and released the Committee from its obligation. Judge Tillerson Adams testified that she explained to Judge Ademiluyi that she was to "continue presiding over the *Lambright* matter herself" and that a debriefing meeting after the trial would be a requirement to complete her training.

The day before the Lambright trial was to resume, Judge Ademiluyi told her law clerk that the Cortexflo camera technology was reliable. Judge Ademiluyi told her law clerk: "I don't want the case coming back on direct appeal or post conviction over this stupid issue. It's a ridiculous objection. The technology is reliable, but I need to make a finding on the record." (Brackets omitted). That evening, the State notified Judge Ademiluyi, through a courtesy copy of a motion the State intended to file the next day, that the State objected to the court holding a Daubert hearing.

The next day, Tuesday, June 21, 2022, when the trial resumed, it was still the case that neither party wanted a Daubert hearing. The prosecutor told Judge Ademiluyi that she had not had enough time to prepare to "successfully put on" what was needed for a Daubert

hearing.  The prosecutor told Judge Ademiluyi that this would be the first <u>Daubert</u> hearing

in Maryland on Cortexflo camera technology and that she wanted to present evidence of

every <u>Daubert</u> factor to avoid making "bad law."  As the prosecutor explained that the State

did not have a witness to testify about the technology of the Cortexflo camera, Judge

Ademiluyi responded that she could "take judicial notice of scientific publications"

concerning the camera's technology.  Judge Ademiluyi stated that she was not *sua sponte*

raising a <u>Daubert</u> issue, and Mr. Lambright's counsel responded that he had not requested

a <u>Daubert</u> hearing and that the court had initiated it.

During argument by the parties, Judge Ademiluyi mentioned that she was aware

that the FJC uses the camera but did not advise that she had initiated contact with the FJC

or of the extent of what she learned from the FJC.  Judge Ademiluyi stated:

> I actually just recently discovered that the Family Justice Center across the
> street uses the camera, and all new trial judges actually get an orientation in
> the Family Justice Center and the camera is one of the things that they give
> us as an orientation on.  So this thing is being used.

Judge Ademiluyi stated that she was "looking at the training that they give new trial judges

on the Cortexflo camera at the Family Justice Center."  Mr. Lambright's counsel responded

that his argument was that he "wasn't even privy to the information" Judge Ademiluyi had.

Judge Ademiluyi admitted the photographs into evidence, taking judicial notice by

stating that the Cortexflo camera "has widespread use throughout this State and other

states, so I do find the technology is reliability."  The Commission found that, at the time

of Judge Ademiluyi's ruling, there was no evidence before her as to the Cortexflo camera's

widespread use or the reliability of the camera's technology, other than the information she

- 30 -

had gathered on her own.

The Commission found that Judge Ademiluyi's testimony as to whether she told the parties in the <u>Lambright</u> trial "that she had spoken to the Family Justice Center was not credible." When asked whether she explicitly told the parties that she had contacted or spoken with someone at the FJC, Judge Ademiluyi responded that it was "implicit" in what she told them. When asked whether she explicitly stated it, yes or no, Judge Ademiluyi responded: "Not here. No." When asked where she stated it, "Judge Ademiluyi admitted that it was not in the trial transcript, and repeated that it was 'implicit in what [she was] saying.'" (Alteration in original). Judge Ademiluyi also admitted that she did not provide to the parties the materials that she had received from the FJC.[19]

After the verdict, in which the jury acquitted Mr. Lambright of all charges, Judge Ademiluyi called Aisha N. Braveboy, the State's Attorney for Prince George's County, to complain about the prosecutor who handled the case. The Commission found that Ms. Braveboy investigated the matter and had no concerns about the prosecutor's performance.

After the <u>Lambright</u> trial, Judge Tillerson Adams attempted to have the anticipated debriefing meeting with Judge Ademiluyi, but Judge Ademiluyi refused to meet. In emails to Judge Tillerson Adams, while refusing to have the debriefing meeting, Judge Ademiluyi made disparaging remarks concerning Judges Tillerson Adams and Serrette and blamed them for her refusal to follow training protocol. On June 29, 2022, Judges Tillerson Adams

---

[19]At the disciplinary hearing, Judge Ademiluyi testified that, when she mentioned "training" to the parties, she was referring to the "brochure" she had obtained from the FJC. The Commission found that Judge Ademiluyi "admitted that Mr. Lambright's counsel would not have been privy to the brochure she received from the FJC."

and Ademiluyi exchanged emails concerning Judge Tillerson Adams's attempts to meet with Judge Ademiluyi. In the emails, Judge Ademiluyi stated that she did not "look forward to meeting" or communicating with Judge Tillerson Adams "at anytime[,]" and that Judge Tillerson Adams is "extremely untrustworthy and disrespectful." After Judge Tillerson Adams advised that the debriefing meeting had been scheduled, Judge Ademiluyi responded twice that the "meeting is cancelled." Judge Ademiluyi also stated that she would never trust Judge Tillerson Adams's "advice on any case nor w[ould she] ever seek it."

On July 1, 2022, Judge Tillerson Adams emailed Judge Ademiluyi, stating that she had been logged into the scheduled debriefing meeting, via Zoom, since 12:00 p.m., that it was then 12:13 p.m., and that her executive administrative assistant had been advised that Judge Ademiluyi would not be joining the meeting. Judge Tillerson Adams advised Judge Ademiluyi that she knew that Judge Ademiluyi was at work and not currently in trial, and that there was no urgent case preventing Judge Ademiluyi from joining the meeting. Judge Tillerson Adams stated that the debriefing meeting was part of what Judge Ademiluyi had been told needed to occur to conclude her training and that Judge Ademiluyi had "not provided any reason, legitimate or otherwise, for [her] nonattendance." Judge Ademiluyi did not respond.

Judge Tillerson Adams sent a second email, noting that it was 12:23 p.m. and that, as Judge Ademiluyi had not joined the Zoom meeting, she assumed that Judge Ademiluyi was "refusing to participate." At 12:35 p.m., Judge Ademiluyi responded to Judge Tillerson Adams, stating:

The purpose of your meeting is solely to subject me to abuse, hostility, and harassment. I have told you many times I am not attending this meeting. Please stop. . . . A judge sat with me for 6 days. That judge's presence on my trial was neither helpful nor necessary. Maybe you instructed that judge to leave before the trial ended or perhaps she chose to leave. Either way the training is now complete. I am well prepared to preside over any type of jury trial should you choose to assign them to me.

(Ellipsis in original).

Six days after the verdict in the Lambright trial, Judge Ademiluyi emailed Judges Coderre and Gibbs, stating that she was "still stuck on that [domestic violence] jury trial!" Judge Ademiluyi asked about amending one of the Maryland Criminal Pattern Jury Instructions because she thought that the instruction encouraged jurors to acquit so they could "get out of jury service." Judge Coderre warned against amending pattern jury instructions. Judge Ademiluyi responded: "Interesting, thanks. You got to learn your power as a judge!" After the email exchange, Judge Gibbs advised Judge Tillerson Adams of Judge Ademiluyi's potential bias. Judge Gibbs stated that it was "troubling that Judge Ademiluyi is being assigned criminal jury trials with this mindset. It appears that she may be biased and this caused me concern."

The Commission found that, approximately two months later, "Judge Ademiluyi continued to display bias and partiality against criminal defendants, this time in communications with her Law Clerk about motions by incarcerated defendants for drug and alcohol abuse evaluations." In discussing a pending motion, Judge Ademiluyi told her law clerk: "You will see drug and alcohol abuse evaluations requests [sic] frequently. It's a way to get out of prison!" Judge Ademiluyi instructed the law clerk to "[a]ssess procedural and substantive grounds to deny the motion" and stated: "I don't allow inmates

to turn me into a means to avoid the parole board. I have yet to release anyone from prison. Most of the motions are filed pro se and I deny them."

In August 2022, Judge Ademiluyi continued a matter, <u>Melissa Richardson v. Jesse Richardson</u>, No. CAD21-10826 (Cir. Ct. Prince George's Cnty.), beyond the try-by date without contacting or getting approval from Judge Woodall, who served as the Family Coordinating Judge at the time. Judges Woodall and Tillerson Adams each addressed the issue via email with Judge Ademiluyi, who denied violating any protocols and cited the time standards in the Family Differentiated Case Management Plan ("DCM Plan") in support of her position. Judge Woodall explained that the continuance policy was a courthouse procedure separate from the DCM Plan. Judge Ademiluyi questioned the authority of the Administrative Judge to create and enforce polices governing the scheduling of cases and stated that she (Judge Ademiluyi) had the authority to handle her cases as she saw fit based on her interpretation of case law. Judge Ademiluyi filed a memorandum to counsel in the <u>Richardson</u> case, setting forth her position about the continuance and noting her disagreement with Judge Woodall. When she was advised of Judge Ademiluyi's conduct, Judge Tillerson Adams instructed Judge Ademiluyi to attend a meeting to talk about the issue. Judge Ademiluyi refused to attend a meeting unless it occurred on record with counsel in the <u>Richardson</u> case.

Judge Ademiluyi also failed to comply with notice requirements for sick leave. On August 2, 2022, Judge Ademiluyi told Judge Tillerson Adams that she would not be able to work the following day. On August 3, 2022, Judge Ademiluyi advised LaCresha Buchanan, Director of Human Resources for Prince George's County, of the same. Ms.

Buchanan instructed Judge Ademiluyi to contact Judge Tillerson Adams if she needed to take time off and to keep Ms. Buchanan updated. A week later, on August 10, 2022, after not receiving a status update, Ms. Buchanan emailed Judge Ademiluyi and advised her to keep Judge Tillerson Adams updated on her status.

Judge Ademiluyi did not provide a status update to Judge Tillerson Adams. On August 18, 2022, Judge Tillerson Adams emailed Judge Ademiluyi and indicated that she was not aware that Judge Ademiluyi had been absent from the courthouse since August 3, 2022. Judge Tillerson Adams reminded Judge Ademiluyi that information about her attendance status was to be communicated directly to her. On August 22 and 23, 2022, Judge Tillerson Adams and Judge Ademiluyi exchanged emails because Judge Ademiluyi failed to report to work on August 22, 2022 as scheduled. On August 25, 2022, Judge Ademiluyi returned to work.

### *The Investigation*

The Commission found that Judge Ademiluyi "failed to cooperate with Investigative Counsel's requests for information . . . and failed to be candid and honest" during the investigation. In a letter dated September 27, 2022, Investigative Counsel notified Judge Ademiluyi of the investigation and identified nine items of alleged sanctionable conduct that were under investigation. In a response dated November 21, 2022, Judge Ademiluyi's counsel set forth what purported to be the allegations of sanctionable conduct provided by Investigative Counsel, but omitted from the list the description of the alleged misconduct provided by Investigative Counsel. For example, Investigative Counsel identified the following item as alleged sanctionable conduct under

- 35 -

investigation: "1. Continuing to fail and refuse to comply with the reasonable directives of a judge(s) with supervisory authority, including but not limited to, participating, and engaging in the training required for new judges, responding to requests for information, and attending meetings[.]" In the response, Judge Ademiluyi's counsel described the item as: "1. Continuing to fail and refuse to comply with the reasonable directives of a judge(s) with supervisory authority[.]" The Commission found that "Respondent then cited her deliberately incomplete recitation of Investigative Counsel's letter to claim that she could not provide a 'substantive response' because of 'the lack of specificity as to the allegations within the Notice of Investigation.'"

In a letter dated January 31, 2023, Investigative Counsel notified Judge Ademiluyi that the investigation also included whether she should have recused herself from the <u>Lambright</u> case and her failure to disclose her personal experience to the parties. In a response dated February 13, 2023, Judge Ademiluyi's counsel alleged that she was a victim of retaliation by her colleagues. The Commission found that both the November 21, 2022 and February 13, 2023 responses from Judge Ademiluyi's counsel, which were unsigned by Judge Ademiluyi, failed to "substantively respond to each allegation raised by Investigative Counsel" and failed to comply with Investigative Counsel's request that any response submitted by counsel on her behalf include Judge Ademiluyi's signature confirming her "approval and adoption of the information contained therein."

## STANDARD OF REVIEW

"In reviewing the Commission's findings of facts, we accept the Commission's findings as *prima facie* correct, and will only disturb the Commission's factual findings to

the extent that they are clearly erroneous." Nickerson, 473 Md. at 518, 251 A.3d at 1092 (citing Matter of Russell, 464 Md. 390, 413, 211 A.3d 426, 440 (2019)). "When reviewing the Commission's legal conclusions, we independently review the record to determine whether the Commission's decision is supported by clear and convincing evidence." Id. at 527, 251 A.3d at 1097 (citing Russell, 464 Md. at 412-13, 211 A.3d at 439).

## DISCUSSION

### A. Findings of Fact

In a filing titled "Respondent Judge April T. Ademiluyi's Exceptions to Findings of Fact, Conclusions, and Recommendations," Judge Ademiluyi states that she "asserts exceptions" to the Commission's findings of fact and sets forth a nine-page narrative of facts, some of which the Commission found but most of which appear to be her own version of events. In response, the Commission asserts that Judge Ademiluyi "does not contend (much less show) that the Commission's factual findings are clearly erroneous" and "does not claim (much less show) that the Commission's factual findings are unsupported by competent evidence." The Commission's position is that, in her exceptions, Judge Ademiluyi "invites this Court to reweigh the evidence, or draw different inferences from it, or overlook the Commission's credibility determinations, or look to things asserted but not in the evidence, or accept her justifications for her sanctionable conduct." We agree with the Commission and for the reasons below, overrule Judge Ademiluyi's exceptions to the Commission's findings of fact.

In Russell, 464 Md. at 419, 211 A.3d at 443, in reviewing exceptions by a judge in a judicial discipline proceeding, we explained that "[t]he Commission, like the hearing

judge in the analogous setting of Attorney Grievance Commission proceedings, must 'pick and choose what evidence to believe.'" (Quoting Attorney Grievance Comm'n v. Woolery, 462 Md. 209, 230, 198 A.3d 835, 847 (2018)). In Woolery, 462 Md. at 230, 198 A.3d at 847, we reiterated this point in light of the attorney's "numerous exceptions to findings of facts in which he suggest[ed] that the hearing court should have made certain findings of fact." (Emphasis omitted). After reviewing Judge Ademiluyi's exceptions and memorandum of law in support of the exceptions, we conclude that Judge Ademiluyi has not identified any particular factual findings made by the Commission that she contends are clearly erroneous. To the extent that Judge Ademiluyi has presented an alternate version of the facts intended to take issue with the Commission not making certain findings of fact, we overrule the exception.

By way of analogy, in attorney discipline proceedings, where neither the attorney nor Bar Counsel excepts to a hearing judge's findings of fact, "this Court may accept a hearing judge's factual findings as established." Attorney Grievance Comm'n v. Wescott, 483 Md. 111, 117, 290 A.3d 1014, 1018 (2023) (citing Md. R. 19-740(b)(2)(A) ("If no exceptions are filed, the Court may treat the findings of fact as established.")). There is no identical Maryland Rule concerning judicial discipline cases, but logic dictates that the same principle would apply. In this case, the Commission's findings of fact are supported by numerous exhibits and extensive testimony. Many of the findings are based on Judge Ademiluyi's own statements, such as the content of emails and text messages to her colleagues and staff and statements that she made on the record during the Lambright trial. We discern no ground on which to conclude that the Commission's findings of fact are

clearly erroneous or any reason, in the absence of specific exceptions, that the Commission's factual findings should not be treated as established.

## B. Conclusions of Law

Judge Ademiluyi excepts to the Commission's conclusions of law and contends that she did not commit any sanctionable conduct. For the reasons explained herein, we overrule Judge Ademiluyi's exceptions to the Commission's conclusions of law but conclude that Judge Ademiluyi did not violate Maryland Rule 18-102.16(a) by failing to provide a substantive response to Investigative Counsel's notification of the investigation and did not violate Maryland Rule 18-101.2 through conduct as a candidate in a judicial election, although clear and convincing evidence supports the Commission's conclusion that she violated both of the Rules in other ways. As the Commission does in its opinion, and Judge Ademiluyi does in her exceptions, we address the Commission's conclusions of law in the five categories below.

### *(1) Cooperation and Candor with Disciplinary Authorities*

Maryland Rule 18-101.1 (Compliance with the Law) provides that "[a] judge shall comply with the law, including" the MCJC.

Maryland Rule 18-101.2 (Promoting Confidence in the Judiciary) provides:

(a) Promoting Public Confidence

A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary.

(b) Avoiding Perception of Impropriety

A judge shall avoid conduct that would create in reasonable minds a perception of impropriety.

Maryland Rule 18-102.16(a) (Cooperation with Disciplinary Authorities) provides that "[a] judge shall cooperate and be candid and honest with judicial and attorney disciplinary agencies."

The Commission found, by clear and convincing evidence, that Judge Ademiluyi failed to adhere to instructions given in its January 5, 2022 Letter of Cautionary Advice and failed to cooperate with the investigation conducted by Investigative Counsel in violation of Maryland Rules 18-101.1, 18-101.2, and 18-102.16(a).[20]

Judge Ademiluyi excepts to the Commission's conclusions and contends that the Letter of Cautionary Advice demonstrated the Commission's and her colleagues' intent to "retaliate" against her for "complaining[,]" *i.e.*, filing a complaint with the Commission, alleging that Judge Tillerson Adams "forg[ed] her signature and improperly monitor[ed] her emails." Judge Ademiluyi asserts that she complied with the Letter of Cautionary Advice and cooperated with Investigative Counsel during the investigation. Judge Ademiluyi argues that the Maryland Rules do not require a judge to respond substantively to allegations raised by Investigative Counsel in a notice letter. Judge Ademiluyi asserts that the lack of her signature on responses to Investigative Counsel "was an unintentional,

---

[20]The Commission also concluded that Judge Ademiluyi willfully failed to comply with Judge Tillerson Adams's training directives in violation of Maryland Rule 18-102.5(c). The Commission addressed this finding in detail, however, in its conclusions regarding Judge Ademiluyi's demeanor and decorum and refusal to comply with directives, protocols, and procedures. We, therefore, discuss the Commission's conclusions concerning Judge Ademiluyi's violation of Maryland Rule 18-102.5(c) below in the sections of the opinion concerning her demeanor and decorum and lack of compliance with directives, protocols, and procedures.

harmless[] error that does not violate any rules" and maintains that she and her counsel were unaware at the time the responses were submitted that her signature had been requested.

We overrule Judge Ademiluyi's exceptions, except as explained below, and conclude that clear and convincing evidence supports the Commission's conclusion that Judge Ademiluyi violated Maryland Rules 18-101.1,[21] 18-101.2, and 18-102.16(a) by failing to abide by the advisements in its Letter of Cautionary Advice and by failing to cooperate with the investigation. The Commission's factual findings plainly demonstrate that, despite taking the position that she complied with the Letter of Cautionary Advice, Judge Ademiluyi did not comply with the Commission's admonishments, and, in fact, engaged in additional misconduct after receiving the letter.[22]

---

[21]The Commission found in each category of misconduct set forth in its conclusions of law that Judge Ademiluyi violated Maryland Rule 18-101.1, which requires a judge to comply with the law, including the MCJC. We agree with the Commission that Judge Ademiluyi violated Maryland Rule 18-101.1 in each category of misconduct. We, therefore, need not address the violation of Maryland Rule 18-101.1 in each category.

[22]With respect to Judge Ademiluyi's contention that the Letter of Cautionary Advice was issued to retaliate against her for filing a complaint against Judge Tillerson Adams, at the disciplinary hearing, Judge Ademiluyi testified that she filed complaints against Judge Tillerson Adams and Judge Cotton in late January or early February 2022. In her exceptions, Judge Ademiluyi states both that she "filed a complaint with the Commission in February 2022 against Judges [Tillerson] Adams and Cotton[,]" and that she filed the complaint in "January or February 2022."

Based on her own testimony and the statements made in her exceptions, Judge Ademiluyi likely filed the complaints against Judge Tillerson Adams and Judge Cotton after the Letter of Cautionary Advice was issued on January 5, 2022. Although Judge Ademiluyi did not provide an exact date on which the complaints were filed, it is clear that she had engaged in a pattern of misconduct long before she made a complaint about either judge, and that she potentially filed the complaints only after having received the Letter of Cautionary Advice. If anything, the record demonstrates that, to the extent Judge

- 41 -

By its very language, Maryland Rule 18-101.2 sets forth an objective reasonable person standard. The standard for evaluating whether a judge has violated Maryland Rule 18-101.2 is whether the judge's conduct would cause a reasonable person to question the judge's ability to carry out the judge's responsibilities with independence, integrity, and impartiality or whether the judge's conduct would create a perception of impropriety in the mind of a reasonable member of the public. Comment [5] to Maryland Rule 18-101.2 confirms that "[t]he test for an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with competence, impartiality, and integrity is impaired."

Even without the Letter of Cautionary Advice, Judge Ademiluyi was required to act in a manner that promoted confidence in the integrity of the judiciary and avoided creating the appearance of impropriety by participating in training, performing her judicial duties in a way that did not negatively affect the public, and complying with reasonable directives from judges with supervisory authority, and she failed to do so. The Commission found that, on March 14, 2022, just two months after receiving the Letter of Cautionary Advice, Judge Ademiluyi sent separate emails to Judges Davey and Tillerson Adams advising that she did not "need any more judges observing [her] and giving [her] feedback, while [she] preside[d] over a jury trial." On March 22, 2022, Judge Ademiluyi emailed Judge Tillerson

Ademiluyi made complaints about Judge Tillerson Adams and Judge Cotton, she did so only after a protracted period of time in which she had already failed to cooperate with Judge Tillerson Adams and other judges with respect to the training required for a new judge and other matters, and after Judge Tillerson Adams had been attempting to address the matters with her.

Adams asking why it was necessary for her to sit with Judge Davey during a civil jury selection process and stating that she was not obligated to use his advice. On March 23, 2022, the Committee notified Judge Tillerson Adams that it had been unable to complete Judge Ademiluyi's training due to her lack of cooperation. On March 30, 2022, Judge Tillerson Adams emailed Judge Ademiluyi and attempted to schedule training for her in the selection of a jury for a criminal trial on Monday, April 4, 2022. Judge Ademiluyi responded over a month later, on May 6, 2022, with a 6-page letter in which she stated, among other things: "I do not need or want to continue your style of jury trial training[.]" It was not until after Judge Ademiluyi received Chief Justice Fader's letter of May 12, 2022 that she agreed to not use leave on Monday, June 6, 2022 so that she could be assigned a jury trial in a criminal case.

On June 13, 2022, after being assigned to participate in training with Judge Serrette in the Lambright trial, without Judge Serrette in the courtroom, Judge Ademiluyi embarked upon a ruling suspending the trial and ordering a Daubert hearing, over the objection of both parties. The Commission found that Judge Ademiluyi rebuffed Judge Serrette's attempt to discuss the matter by telling Judge Serrette that "she did not need or want her advice and she viewed Judge Serrette merely as a resource she no longer intended to use." As a result of all of this, Judge Serrette sent a memorandum to Judge Tillerson Adams outlining Judge Ademiluyi's lack of cooperation with training during the Lambright trial. On June 16, 2022, the Committee issued a memorandum to Judge Tillerson Adams advising that it had been informed that Judge Ademiluyi "does not accept any advice or counsel from designated training judges" and that it could not complete the training

process. These findings show that, although Judge Ademiluyi was cautioned by the Commission to comply with reasonable directives from judges with supervisory authority, to conduct designated dockets so as not to negatively affect the public, and to refrain from engaging in future sanctionable conduct, she failed to follow the Commission's instructions. Rather, Judge Ademiluyi engaged in exactly the type of conduct that the Commission had admonished her not to. In doing so, Judge Ademiluyi plainly engaged in conduct that would cause a reasonable person to question her ability to carry out the responsibilities of her office with independence, integrity, and impartiality and therefore violated Maryland Rule 18-101.2.

This Court has not before considered whether a judge's failure to comply with a letter of cautionary advice issued by the Commission constitutes a violation of Maryland Rule 18-102.16(a), which requires that a judge cooperate and be candid and honest with the Commission. In Nickerson, 473 Md. at 530-31, 251 A.3d at 1099, we concluded that clear and convincing evidence supported the Commission's finding that Judge Nickerson violated Maryland Rule 18-102.16(a) by, among other things, failing to provide information required by the agreed-upon terms of a conditional diversion agreement and reprimand. We explained that with a conditional diversion agreement and reprimand, "the Commission agreed to a disposition that did not involve proceeding with formal charges[,]" and "Judge Nickerson was given a second chance." Id. at 532, 251 A.3d at 1100. We stated that Judge Nickerson's violation of Maryland Rule 18-102.16(a) was troubling because the judicial discipline proceeding could have been avoided had she just complied with the agreed-upon terms of the conditional diversion agreement and reprimand. See id.

at 532, 251 A.3d at 1100. We observed that "[t]he judicial disciplinary system established by the Maryland Constitution and Maryland Rules does not work if judges fail to cooperate with disciplinary investigations or the terms and conditions established by the Commission in connection with the disposition of the investigation." Id. at 531, 251 A.3d at 1099-100.

In addition to a conditional diversion agreement, see Md. R. 18-426, and a reprimand, see Md. R. 18-427, there are two other manners in which a complaint may be disposed of other than by the filing of charges—retirement ordered by the Supreme Court as a disposition, see Md. R. 18-428, and dismissal of the complaint, with or without a letter of cautionary advice, see Md. R. 18-425. Maryland Rule 18-425(b)(1) provides that, "[i]f the Commission determines that any sanctionable conduct that may have been committed by the judge will be sufficiently addressed by the issuance of a letter of cautionary advice, the Commission may accompany a dismissal with such a letter." The Commission is required to notify the judge of the proposed dismissal of a complaint with a letter of cautionary advice, and the judge may file a written response, which the Commission must consider before issuing the dismissal and letter of cautionary advice. See Md. R. 18-425(b)(2). "The existence and contents of the letter are private and confidential, except that the Commission and Investigative Counsel shall retain a copy of it and any response by the judge and may consider them if relevant in any subsequent proceeding against the judge." Md. R. 18-425(b)(3). The Committee note for Maryland Rule 18-425(b)(1) states that a letter of cautionary advice "is intended to be remedial in nature, so that the judge will be careful not to repeat that or similar conduct."

Just as we concluded in Nickerson that a judge's failure to comply with the terms

and conditions of a conditional diversion agreement and a private reprimand constituted a violation of Maryland Rule 18-102.16(a), we conclude that a judge's failure to comply with a letter of cautionary advice also constitutes a violation of Maryland Rule 18-102.16(a). There are sufficient similarities between the dismissal of a complaint with a letter of cautionary advice and a conditional diversion agreement and reprimand by the Commission to warrant treating a letter of cautionary advice in the same manner for purposes of a violation of Maryland Rule 18-102.16(a).

As is the case with a conditional diversion agreement and a private reprimand, that a letter of cautionary advice is confidential does not mean that a judge's conduct after receiving the letter cannot violate Maryland Rule 18-102.16(a). In a letter of cautionary advice, a judge is advised by the Commission not to repeat conduct that could have been the basis for charges and that the letter may be considered in subsequent disciplinary proceedings. Not following that advice constitutes a failure to cooperate with the Commission and violates Maryland Rule 102.16(a).

Clear and convincing evidence also supports the Commission's finding that Judge Ademiluyi's failure to sign and adopt the November 21, 2022 and February 13, 2023 response letters sent by her attorney to Investigative Counsel violated Maryland Rule 18-102.16(a). Judge Ademiluyi acknowledges that she did not sign the responses, but contends that the absence of her signature was an unintentional error that did not violate any rules and that she and her counsel did not know that her signature had been requested. A review of Investigative Counsel's letters of September 27, 2022 and January 31, 2023 shows that, as the Commission found, in each letter, Investigative Counsel requested that,

if Judge Ademiluyi retained counsel to submit a response on her behalf, she "include [her] signature confirming [her] approval and adoption of the information contained therein."[23] We are not persuaded by Judge Ademiluyi's contention that she and her counsel were unaware that her signature had been requested.

The Commission's request that Judge Ademiluyi sign any response submitted by an attorney on her behalf was a reasonable request. The request imposed no greater obligation on Judge Ademiluyi than that which exists for a judge who submits a response to Investigative Counsel without the assistance of counsel. Maryland Rule 18-422, which governs the investigations by Investigative Counsel, provides that, "[u]pon the issuance of notice pursuant to subsection (a)(4) of this Rule, Investigative Counsel shall afford the judge a reasonable opportunity prior to concluding the investigation to present such information as the judge chooses and shall give due consideration to the judge's response before concluding the investigation." Md. R. 18-422(a)(5). Although the Rule does not state that Investigative Counsel may require that a judge respond to a notice of investigation, if a judge chooses to respond, the judge's response can violate the MCJC and Maryland Rule 18-102.16(a) in particular. Failing to comply with a request for a signature acknowledging her approval and adoption of her attorney's responses was such a violation, *i.e.*, a violation of Maryland Rule 18-102.16(a), because it was a failure to cooperate with a reasonable request from Investigative Counsel.

---

[23]The first notice letter was sent directly to Judge Ademiluyi, as Investigative Counsel had no reason to know that Judge Ademiluyi would be represented by counsel. Judge Ademiluyi's attorney responded. The second notice letter was emailed to Judge Ademiluyi's attorney, who again responded on Judge Ademiluyi's behalf.

Clear and convincing evidence does not, however, support the Commission's conclusion that Judge Ademiluyi violated Maryland Rule 18-102.16(a) by failing to provide substantive responses to Investigative Counsel. We cannot conclude that Judge Ademiluyi failed to cooperate by not substantively responding to each allegation raised in Investigative Counsel's letters because Investigative Counsel did not ask for responses, substantive or otherwise. In the September 27, 2022 letter, Investigative Counsel: (1) advised Judge Ademiluyi that an investigation had been undertaken into whether she committed sanctionable conduct; (2) outlined the nature of the alleged sanctionable conduct under investigation; (3) set forth the MCJC Rules implicated by the investigation; (4) reminded Judge Ademiluyi of her obligation to preserve any and all records or evidence that could be relevant to the investigation; (5) advised Judge Ademiluyi that she had an opportunity to present any information she chose; and (6) requested that, if she retained an attorney, any response submitted by counsel on her behalf include her signature confirming her approval and adoption of the information in the response. In the January 31, 2023 letter, Investigative Counsel advised that the alleged sanctionable conduct under investigation had been supplemented to include whether Judge Ademiluyi should have recused herself from the Lambright case. In the January 31, 2023 letter, as in the earlier letter, Investigative Counsel reminded Judge Ademiluyi of her obligation to preserve records and that she had an opportunity to present any information she chose, and requested that, if she retained an attorney, she sign any response submitted by counsel on her behalf. In neither letter, however, did Investigative Counsel request that Judge Ademiluyi provide a substantive response or any response at all. In each letter, Investigative Counsel indicated

- 48 -

that Judge Ademiluyi could respond if she chose to and, to the extent that she wanted to present any information, provided a deadline for submission of the information. The only request that Investigative Counsel made in its letters was that Judge Ademiluyi sign any response submitted by an attorney on her behalf, which was a reasonable request with which Judge Ademiluyi failed to comply.[24]

### (2) Conduct as a Candidate for Election

Maryland Rule 18-104.4(a), (b), (d)(1), and (d)(3) (Political Conduct of a Candidate for Election) provide:

A candidate for election:

(a) shall comply with all applicable election laws and regulations;

(b) shall act at all times in a manner consistent with the independence, integrity, and impartiality of the judiciary and maintain the dignity appropriate to judicial office;

\* \* \*

(d) As to statements and materials made or produced during a campaign:

(1) shall review, approve, and be responsible for the content of all campaign statements and materials produced by the candidate or by the candidate's campaign committee or other authorized agents;

\* \* \*

---

[24]Given that Investigative Counsel did not request that Judge Ademiluyi submit a response to either letter, we need not address whether Maryland Rule 18-422(a)(5) permits Investigative Counsel to require a judge to provide a substantive response to allegations of sanctionable conduct raised in a notice letter. For the same reason, under the circumstances of this case, we do not address whether the responses that were submitted by Judge Ademiluyi's attorney on her behalf were insufficient and uncooperative, and therefore violative of Maryland Rule 18-102.16(a).

(3) with respect to a case, controversy, or issue that is likely to come before the court, shall not make a commitment, pledge, or promise that is inconsistent with the impartial performance of the adjudicative duties of the office[.]

The Commission found, by clear and convincing evidence, that Judge Ademiluyi made statements in a campaign video and blog post that violated Maryland Rules 18-101.1, 18-101.2, and 18-104.4(a), (b), (d)(1), and (d)(3). The Commission found that, because Judge Ademiluyi was a successful "candidate for election" during the 2020 general election, pursuant to Maryland Rule 18-104.6(b), she is subject to judicial discipline for campaign conduct under Maryland Rule 18-104.4(a), (b), (d)(1), and (d)(3).

The Commission determined that the content of Judge Ademiluyi's campaign video and blog post "could reasonably be perceived as inconsistent with the independence and impartiality of judicial office." The Commission explained that the content "could reasonably be viewed as a commitment, pledge, or promise that is inconsistent with the impartial performance of the adjudicative duties of being a judge." The Commission concluded that Judge Ademiluyi's statements in the video, along with statements made in the blog post, "could reasonably be perceived as promising to help victims of, and those alleging that they are victims of, sexual violence, . . . and that she would use her power as a judge to . . . make particular results happen for alleged victims of sexual violence."

Judge Ademiluyi excepts to the Commission's conclusion that she violated the MCJC through conduct as a candidate for election and maintains that she did nothing wrong in identifying herself publicly "as a survivor of sexual violence" and sharing her personal experience in her campaign video and blog post. According to Judge Ademiluyi,

Investigative Counsel did not prove what the words "me too," as used in her campaign video, refer to, and that, as she testified at the disciplinary hearing, she used the words to refer to herself. Citing a footnote in Ademiluyi v. Egbuonu, 466 Md. 80, 126 n.34, 215 A.3d 329, 356 n.34 (2019), Judge Ademiluyi argues that, under the MCJC, incumbent judges are restricted in their campaign activities from making campaign promises that would constitute a commitment, pledge, or promise that is inconsistent with the impartial performance of their judicial duties, but "[c]hallengers who are not incumbent judges do not have any such restrictions on political conduct and campaign statements."

In response, the Commission points out that, although Judge Ademiluyi testified that she used the literal definition of the words "me too" in her campaign video to refer to herself, it did not find her testimony credible because her testimony was contradicted by images in the video of crowds holding signs stating "Me too[,]" as well statements that Judge Ademiluyi made in the video.

We overrule Judge Ademiluyi's exceptions. Clear and convincing evidence supports the Commission's conclusions that Judge Ademiluyi's campaign conduct violated Maryland Rules 18-104.4(a), (b), (d)(1), and (d)(3).[25] We begin with the applicability of

---

[25]In her exceptions, Judge Ademiluyi contends that her campaign conduct is not subject to the MCJC and cites Ademiluyi, 466 Md. at 126 n.34, 215 A.3d at 356 n.34. In Ademiluyi, id. at 92, 215 A.3d at 335-36, we addressed whether nomination by the Libertarian Party of Maryland of Judge Ademiluyi, who was then an attorney running for judicial election, was improper where the Libertarian Party's constitution required that its candidates for office be registered with the party and Judge Ademiluyi was not. In footnote 34, we observed that, under the MCJC, "incumbent judges are restricted in their campaign activities and from making campaign statements or promises that would reflect upon their judicial integrity." Id. at 126 n.34, 215 A.3d at 356 n.34. We remarked that "[c]hallengers

the Rules to Judge Ademiluyi during her campaign. Under Maryland Rule 18-104.1(c)(1)(A), the definition of a "[c]andidate for election" includes an individual who "seeks initial election to a circuit court[.]" Maryland Rule 18-104.6(b) provides that "[a] successful candidate and a judge who unsuccessfully sought a different judicial office are subject to judicial discipline for campaign conduct." Maryland Rule 18-104.4(d)(3) provides that a candidate for election, "with respect to a case, controversy, or issue that is likely to come before the court, shall not make a commitment, pledge, or promise that is inconsistent with the impartial performance of the adjudicative duties of the office[.]" These provisions unequivocally lead to the conclusion that Judge Ademiluyi, as a successful candidate for election to the Circuit Court for Prince George's County, may be subject to judicial discipline for campaign conduct that violated Maryland Rule 18-104.4, which governs the political conduct of a candidate for election.

We reach a different result as to Maryland Rule 18-101.2. We do not read the language of Maryland Rule 18-104.6(b) as broadly providing that any successful candidate for judicial election is subject to discipline under all of the MCJC, regardless of whether a particular Maryland Rule pertains to the conduct of a judge while a candidate for election or the conduct of a judge in general. Maryland Rule 18-100.2(d) governs the scope of the

_____

who are not incumbent judges do not have any such restrictions on political conduct and campaign statements." Id. at 126 n.34, 215 A.3d at 356 n.34. That statement, however, cannot be read as Judge Ademiluyi argues. The case did not involve resolution of an issue as to whether the MCJC may be violated through campaign conduct where an attorney is successful in being elected a circuit court judge. In remarking that challengers who are not incumbent judges do not have restrictions on political conduct and campaign statements, we in no way stated that a successful challenger who becomes a judge is absolved of violations of the MCJC committed as part of a judicial campaign.

- 52 -

MCJC and provides that the Rules of the MCJC apply to "[c]andidates and applicants for judicial office as defined in Rule 18-104.1, to the extent that a Rule expressly applies to such candidates or applicants." Although Judge Ademiluyi violated Maryland Rule 18-101.2 in other ways, we do not conclude that she violated Maryland Rule 18-101.2 with her conduct as a candidate for election, as this is not a Maryland Rule that expressly applies to candidates for election who are not judges. There is substantial overlap between Maryland Rule 18-101.2(a), which provides that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary[,]" and Maryland Rule 18-104.4(b)'s requirement that a candidate for judicial election "act at all times in a manner consistent with the independence, integrity, and impartiality of the judiciary[.]" Where a successful candidate for election is not a judge running for election, Maryland Rule 18-104.4(b) applies and Maryland Rule 18-101.2 would not. A judge who is a successful candidate for election would, however, be subject to discipline under both Rules.

Turning to the substance of the violations, clear and convincing evidence demonstrates that the content of Judge Ademiluyi's campaign video and blog post reasonably could be perceived as conveying information that would be inconsistent with the independence and impartiality of the judiciary in violation of Maryland Rule 18-104.4(b). In her blog post, among other things, Judge Ademiluyi stated that "police and prosecutors destroy and fabricate evidence to cover up the drug rapes." (Capitalization and emphasis omitted). In addition to claiming that police and prosecutors destroy and fabricate evidence to cover up drug rapes, Judge Ademiluyi stated that she had endured

"years of abuse . . . from police, prosecutors, and judges who literally put the justice system up for sale to rapists[.]" Such statements could easily cause a reasonable person to infer that, once elected, Judge Ademiluyi would not be impartial in handling rape cases or that she would be biased against police and prosecutors in such cases.

With her campaign video, Judge Ademiluyi could reasonably be perceived as having violated Maryland Rule 18-104.4(b) as well as having made a commitment, pledge, or promise concerning sexual assault cases that was inconsistent with the impartial performance of the adjudicative duties of a circuit court judge in violation of Maryland Rule 18-104.4(d)(3). Statements in the campaign video could be viewed as Judge Ademiluyi promising to help survivors of sexual assault and give rise to an inference that Judge Ademiluyi would not be impartial in sexual assault cases. In the campaign video, after detailing her experience as a rape survivor, Judge Ademiluyi stated: "Women need more than a movement[,] People need more than protests in the streets[,] We need a power, a judge's power[,] . . . As a judge I would have the power to help you too[.]" Judge Ademiluyi stated that, as a judge: "I will stand for Me Too and all of you[,] I have the right experience practicing law[,] I know the system[,] I know how to make it work for all of us[.]" These statements could easily lead a reasonable person to conclude that Judge Ademiluyi made a commitment, pledge, or promise that was inconsistent with the impartial performance of the duties of judicial office and that, in doing so, she failed to act in a manner that is consistent with the independence, integrity, and impartiality of the judiciary.

As to the Commission's finding that references to "me too" in Judge Ademiluyi's

campaign video referred to the Me Too movement,[26] as with any of the Commission's findings of fact, we will only disturb the finding if it is clearly erroneous. Given that images of two screenshots from the campaign video attached to the Commission's response show, in one instance, a member of a crowd holding a sign stating "ME TOO ME TOO ME TOO" and, in another instance, a member of a crowd holding a sign displaying the #MeToo hashtag at least five times, and that in both instances other people in the crowds also appear to be carrying signs stating "Me Too," we cannot conclude that the Commission's finding concerning the meaning of the words "me too" was clearly erroneous.[27]

In determining that clear and convincing evidence supports the Commission's conclusions that Judge Ademiluyi's campaign conduct violated Maryland Rules 18-

---

[26]The Me Too movement, which includes the use of the well-known #MeToo hashtag, is a "social movement [] characterized by survivors of sexual abuse creating social media posts disclosing their experiences with sexual violence and identifying their abusers." Johnson v. Freborg, 995 N.W.2d 374, 386 (Minn. 2023), cert. denied, ___ U.S. ___, 144 S. Ct. 819 (2024) (citation omitted). "The movement seeks to connect survivors, encourage victims to tell their story, and increase awareness of the scope of the problem of sexual assault." Id. (citation omitted).

[27]Maryland Rule 18-104.4(d)(1) provides that a candidate for election "shall review, approve, and be responsible for the content of all campaign statements and materials produced by the candidate or by the candidate's campaign committee or other authorized agents[.]" The Commission has not contended that Judge Ademiluyi failed to review or approve materials produced by her campaign, and Judge Ademiluyi has not claimed that she did not review and approve the campaign video and blog post at issue. Rather, as we understand it, the Commission's conclusion is that, by making statements that constituted promises or commitments that are inconsistent with the impartial performance of the duties of her office and with the integrity, impartiality and independence of the judiciary in violation of Maryland Rules 18-104.4(b) and (d)(3), Judge Ademiluyi failed to take responsibility for the content of statements made during her judicial campaign and also violated Maryland Rule 18-104.4(d)(1). We agree. The purpose of Maryland Rule 18-104.4(d)(1)'s requirement that a candidate be responsible for the content of all campaign statements and materials is to ensure that statements made and material produced during a campaign comply with the MCJC.

104.4(a), (b), (d)(1), and (d)(3), we do not conclude that it is inherently wrong for a candidate for judicial office to publicly identify as a victim or survivor of a crime or share information about the candidate's personal experiences. What matters is that the candidate not make a commitment, pledge, or promise that a reasonable person might view as inconsistent with the independence, integrity, and impartiality of the judiciary or with the impartial performance of the adjudicative duties of judicial office.

### *(3) Decorum and Demeanor*

Maryland Rule 18-102.5 (Competence, Diligence, and Cooperation) provides:

(a) A judge shall perform judicial and administrative duties competently, diligently, promptly, and without favoritism or nepotism.

(b) A judge shall cooperate with other judges and court officials in the administration of court business.

(c) A judge shall not willfully fail to comply with administrative rules or reasonable directives of a judge with supervisory authority.

Maryland Rule 18-102.8(b) (Decorum, Demeanor, and Communication with Jurors) provides: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, attorneys, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of attorneys, court staff, court officials, and others subject to the judge's direction and control."

The Commission found by clear and convincing evidence that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.5, and 18-102.8(b)[28] by failing to

---

[28]In the section of its opinion listing conclusions of law, the Commission stated that Judge Ademiluyi's "failure to exercise appropriate decorum and demeanor" violated

"cooperate with, and fail[ing] to be patient, dignified, and courteous to, court staff and judicial colleagues."

Judge Ademiluyi contends that she did not commit sanctionable conduct involving a lack of appropriate decorum or demeanor. Judge Ademiluyi argues that she did not violate the MCJC by terminating the employment of members of her staff, who were at-will employees, and that she had the right and obligation to criticize the work product of her staff, including her law clerk. Judge Ademiluyi asserts that she did not use vulgar or offensive language in the courtroom, speak discourteously to litigants, or publicly criticize her colleagues, which are situations in which judges may be disciplined for a lack of appropriate decorum and demeanor.

According to Judge Ademiluyi, the Commission relied on "privileged" emails, which were taken out of context. Judge Ademiluyi maintains that her comments to and about her staff must be read in context to be fully understood and characterizes multiple communications to her staff as messages in which she "was venting" about her judicial colleagues. Judge Ademiluyi also points out that Ms. Hurey, her courtroom clerk, testified that she is fair and respectful to litigants and open to suggestions on improvement.

In In re Lamdin, 404 Md. 631, 634-35, 638, 948 A.2d 54, 55-57 (2008), Judge Lamdin, then a judge of the District Court of Maryland, sitting in Baltimore County,

---

Maryland Rule 18-102.2(a), which provides that a judge shall uphold and apply the law fairly and impartially. The Commission did not make any findings, however, with respect to Judge Ademiluyi having violated Maryland Rule 18-102.2(a) by failing to exercise appropriate decorum and demeanor. As such, we do not address the violation of Maryland Rule 18-102.2(a) in this section of the opinion.

stipulated that he violated, among other provisions of the MCJC, what was then known as Canon 3B, which provided in part that "[a] judge shall be dignified" and "shall be courteous to and patient with jurors, lawyers, litigants, witnesses, and others with whom the judge deals in an official capacity and shall require similar conduct of lawyers and of court officials, staff, and others subject to the judge's direction and control." (Cleaned up). The stipulation contained information that, in one case, after a defendant's request for a postponement had been denied and the defendant requested a jury trial, Judge Lamdin responded: "That's Judge Turnbull's[29] new ruling, if it's after eleven o'clock it's the next day. They don't like to overtax themselves up there. After eleven o'clock it's Judge Turnbull's new ruling is that jury trials are the next day." Id. at 642, 948 A.2d at 60 (cleaned up). In another case in which the defendant had not been brought from the circuit court, Judge Lamdin stated: "Don't they come before we do? I know in their own minds they do, certainly. . . . I mean, they don't work in the afternoon up there. . . . They're all on their way to have cocktails or something up there at the Circuit Court. Yeah, they don't work in the afternoon." Id. at 642-43, 948 A.2d at 60 (cleaned up). We concluded that Judge Lamdin's "conduct was prejudicial to the administration of justice . . . and lacked dignity, courtesy, and patience." Id. at 650, 948 A.2d at 65. We explained that "[t]rust and confidence in the judicial system [are] undermined when a judge disparages and

_____

[29]According to the Maryland Manual On-Line, the Honorable John G. Turnbull II was the Administrative Judge of the Circuit Court for Baltimore County from 1996 to 1997 and from 2001 to 2013. See Md. State Archives, John Grason Turnbull II (1943-2019) (Mar. 11, 2022), https://msa.maryland.gov/msa/mdmanual/31cc/former/html/msa11751. html [https://perma.cc/489E-PL4X].

undermines fellow members of the judicial system." Id. at 652, 948 A.2d at 66.

In Russell, 464 Md. at 428, 211 A.3d at 449, we concluded that Judge Russell "exhibited a pattern of divisive, combative, and volatile interpersonal issues" and that her conduct violated Maryland Rules 18-101.1, 18-101.2(a), 18-102.5(b), and 18-102.8(b). We summarized Judge Russell's conduct as follows:

> When handling clerical errors, Respondent failed to maintain an equanimous demeanor. Lacking a modicum of civility, Respondent was eruptive, disrespectful, and demeaning toward courthouse staff. Respondent yelled at, accused, and humiliated staff members. She physically shoved an employee of the judiciary[]. Respondent's erratic behavior occurred in front of litigants and lawyers. Likewise, Respondent repeatedly yelled at her colleagues, and did so in front of other judges, court staff, and members of the public. She interrupted an ongoing trial presided over by another judge to address a scheduling matter, which not only violated internal operating procedures, but disturbed the ongoing proceedings in that court. On multiple occasions, Respondent defied the directives of administrators and supervisors, and even attempted to undermine their authority. On one occasion, Respondent accused her Chief Judge of threatening her without cause.

Id. at 428, 211 A.3d at 448-49. We explained that, under Maryland Rule 18-102.5, "judges are required to interact with others in a cooperative and respectful manner." Id. at 427, 211 A.3d at 448 (citation omitted). "[P]atience, dignity[,] and common courtesy are essential parts of judging, whatever the personality of the judge, and a pattern of judicial discourtesy represents a profound threat to the institution of law and requires a strong response." Id. at 430-31, 211 A.3d at 450 (cleaned up). We stated that Judge Russell's conduct was "unbecoming of a member of the judiciary" and that she failed "to maintain the demeanor that our Rules require of judges." Id. at 428, 211 A.3d at 449 (citation omitted). We rejected Judge Russell's characterization of the case as involving "mere personality

disputes[.]" Id. at 430, 211 A.3d at 450.[30] We stated "that judges differ in both style and personality and that these qualities, in and of themselves, are not matters for discipline." Russell, 464 Md. at 430, 211 A.3d at 450 (cleaned up).

Clear and convincing evidence supports the Commission's conclusion that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.5(b) and (c),[31] and 18-102.8(b) by engaging in a pattern of behavior demonstrating a lack of the patience, dignity, courteousness, and cooperation required of a judge. The Commission's findings of fact show that Judge Ademiluyi engaged in a lengthy pattern of demeaning and discourteous behavior toward her staff that violated Maryland Rules 18-101.2(a) and 18-102.8(b). Judge

---

[30]We emphasized that Judge Russell's "misconduct did not amount to mere personality disputes[,]" and stated:

> Such a factual pattern would not qualify as sanctionable conduct and require intervention by either the Commission or this Court. To maintain a judicial temperament, a judge need not be constantly affable and loquacious. Judges may engage in genuine disagreements and lively discussions with fellow judges and courthouse staff; and judges may disagree or be incompatible with colleagues. Each case must be considered on its own facts to determine whether a judge's conduct has exceeded the bounds of a permissible judicial temperament. Here, Respondent has unrelentingly exhibited a pattern of discourteous and disrespectful behavior. Taken in isolation, any single instance of Respondent conflicting with her colleagues would likely not amount to sanctionable conduct. Taken together, however, the unyielding pattern of Respondent's conduct has fostered a toxic environment in the District Court, and it leads this Court to conclude that her conduct is sanctionable.

Russell, 464 Md. at 430 n.21, 211 A.3d at 450 n.21.

[31]Although the Commission did not state whether it concluded that Judge Ademiluyi violated one, two, or all three of the sections of Maryland Rule 18-102.5, its findings of fact and conclusions of law demonstrate by clear and convincing evidence violations of Maryland Rule 18-102.5(b) and (c).

Ademiluyi's conduct with her staff exceeded appropriate feedback about an employee's work product (which may not always be positive) and crossed the line into a continuous pattern of making offensive and humiliating remarks.

As in Russell, 464 Md. at 430 n.21, 211 A.3d at 450 n.21, we note that, while some of Judge Ademiluyi's critiques, while harsh, did not individually rise to the level of sanctionable conduct, her pattern of remarks fostered a toxic environment in her chambers. With respect to Ms. Ochoa, this pattern of conduct continued throughout Ms. Ochoa's clerkship, including throughout the period during which Ms. Ochoa continued to work beyond her desired end date as Judge Ademiluyi had asked her to stay. During this period, Judge Ademiluyi terminated Ms. Ochoa after hours on a holiday weekend, requested that Ms. Ochoa not be paid for time that she had worked, attempted to prevent Ms. Ochoa from retrieving her personal belongings, and advised Human Resources to process Ms. Ochoa's resignation as improper notice with no ability for rehire.

Judge Ademiluyi disparaged her second executive administrative aide, Ms. Higgs, to Ms. Ochoa by referring to Ms. Higgs as unwell and in need of mental help. Judge Ademiluyi belittled and mocked Ms. Higgs to Ms. Ochoa for resigning when she forwarded Ms. Higgs's resignation notice to Ms. Ochoa and commented that they "knew she would run."

Judge Ademiluyi also displayed a lack of patience, dignity, and courtesy with her first executive administrative aide, Ms. Randall. After Ms. Randall responded on the same night to an email that Judge Ademiluyi sent on a Friday after 10 p.m. and stated that she supported Judge Ademiluyi and that she was "happy to be part of Team Ademiluyi[,]"

- 61 -

Judge Ademiluyi replied that she was unsure whether Ms. Randall actually was supportive, that Ms. Randall was "starting to worry" her, and that she did not want to "waste time on [Ms. Randall] challenging [her] or refusing to do what [she] ask[ed.]" At the end of the message, Judge Ademiluyi appeared to threaten Ms. Randall's employment, telling her that they would talk about her "expectations" and whether Ms. Randall could "handle them."

To be sure, a judge advising a law clerk or administrative aide that work is unsatisfactory or that the judge discerns an insufficient effort on the part of the staff member is not a violation of the MCJC. Nor does the circumstance that a member of a judge's staff may report seeking medical care due to job stress alone support the conclusion that a judge violated the MCJC. In addition, under the Judiciary's policies, an at-will employee may be terminated at any time without cause and nothing in this opinion should be read to conclude otherwise.[32]

We do not conclude that Judge Ademiluyi violated the MCJC by critiquing the work of her staff, advising her staff of insufficient effort, or terminating the employment of her staff. Judge Ademiluyi's conduct went beyond advising her law clerk and administrative

---

[32]Specifically, Section 2.2(b)(2) of the Judiciary Employee Handbook, part of the policy on at-will employment, defines at-will employment as "[a]n employment relationship that can be terminated at any time by the employer, with or without cause." Division of Human Resources, Maryland Judiciary, Judiciary Employee Handbook, 2.2 Policy on At-Will Employment at 1, available at https://www.mdcourts.gov/sites/default/files/import/employeehandbook/pdfs/atwillemployment.pdf [https://perma.cc/VK6F-WAZU]. Section 2.2(c) of the Judiciary Employee Handbook states, though, that, "[t]o protect the interests of all involved, the Administrative Head must consult with the [Judiciary Human Resources Division] before terminating the employment of an at-will employee. The termination will not be approved if the [Division] determines the termination is a violation of law or the at-will employee's constitutional rights." Judiciary Employee Handbook, supra, at 2.

assistants that their work was unsatisfactory or reflected insufficient effort. Judge Ademiluyi engaged in a pattern of insulting and humiliating her law clerk and her administrative assistants, and, when her law clerk resigned as a result of this conduct, Judge Ademiluyi engaged in a series of actions, seemingly designed to further humiliate her. It was not Judge Ademiluyi's critique of Ms. Ochoa's, Ms. Higgs's, or Ms. Randall's effort or work product that violated the MCJC. Rather, it was the pattern of demeaning and disparaging remarks that Judge Ademiluyi made to or about them that violated the MCJC.[33]

Judge Ademiluyi also made disparaging remarks about judges and the judiciary to her staff and thereby violated Maryland Rules 18-101.2 and 18-102.8(b). In messages to Ms. Higgs, Judge Ademiluyi referred to "those evil people in that courthouse[.]" In messages to Ms. Ochoa and another law clerk at different times, she told the law clerks to expect "dysfunction" in the court. In a message to her law clerk, Judge Ademiluyi stated: "You know how crazy these judges are[.]" Judge Ademiluyi told her administrative aide that they could not "talk about the corruption[.]" In a message to another judge's paralegal assistant, Judge Ademiluyi stated that she (Judge Ademiluyi) had "been struggling to get [a colleague] to handle her other issues." Judge Ademiluyi referred to enjoying a "break from all the crazy judges" in a text message to her executive administrative aide. In an email to her law clerk, Judge Ademiluyi said it was "annoying, ineffective, and inefficient having to work with another judge, and for some reason they think they're training me."

---

[33]Similarly, it was not that Judge Ademiluyi ended Ms. Ochoa's employment earlier than the agreed-upon date that violated any MCJC. Instead, it was the manner in which she did so, coupled with her pattern of engaging in other misconduct involving Ms. Ochoa, that violated Maryland Rules 18-101.2(a) and 18-102.8(b).

Judge Ademiluyi told her law clerk that they needed to "be cautious" with the other judges and that they could not trust the other judges. She also told her law clerk that the other judges were "a total disservice to the people[,]" and not to trust anyone and to "try to ignore any foolishness[.]"

Judge Ademiluyi made particularly inappropriate and derogatory comments about Judge Tillerson Adams to her law clerk. In a message to her law clerk, Judge Ademiluyi characterized Judge Tillerson Adams as "complicated[.]" Judge Ademiluyi told her law clerk that she wanted to "curse at" Judge Tillerson Adams but sent a letter instead. She told her law clerk that Judge Tillerson Adams's "obsession" with her was "literally making [her] sick" and commented that Judge Tillerson Adams's behavior "is what happens when power destroys your humanity and humility assuming she actually had any."

Judge Ademiluyi also engaged in conduct demonstrating a lack of patience, dignity, courtesy, and cooperation with her judicial colleagues in violation of Maryland Rules 18-101.2, 18-102.5(b) and (c), and 18-102.8(b). In email exchanges with Judge Tillerson Adams, who was attempting to meet with Judge Ademiluyi after the Lambright trial, Judge Ademiluyi was uncooperative, dismissive, and displayed a lack of basic courtesy. Among other things, even after being advised that the debriefing meeting had been scheduled, Judge Ademiluyi responded twice that the meeting was "cancelled." Judge Ademiluyi told Judge Tillerson Adams that she did not "look forward to meeting [her] or communicating with [her] at anytime." Judge Ademiluyi told Judge Tillerson Adams that she was "extremely untrustworthy and disrespectful." In an email to Judge Tillerson Adams and Judge Davey, on which Judge Tillerson Adams's administrative assistant was copied,

Judge Ademiluyi questioned Judge Tillerson Adams's character, stating that Judge Tillerson Adams appeared to be the only administrative judge who did not care about complying with the administrative order concerning training, "which is not all surprising given her character." These exchanges demonstrate that Judge Ademiluyi failed to interact with Judge Tillerson Adams and other judges "in a cooperative and respectful manner" required of a judge. Russell, 464 Md. at 427, 211 A.3d at 448 (citation omitted).

Although Judge Ademiluyi contends that the Commission relied on privileged emails and that she did not waive the privilege, she fails to identify any privilege that applies. In her exceptions, Judge Ademiluyi contends that emails to her staff in which she was "deliberating . . . are protected by executive privilege[.]" Executive privilege, though, is

> [a] privilege, based on the constitutional doctrine of separation of powers, that exempts the executive branch of the federal government from usual disclosure requirements when the matter to be disclosed involves national security or foreign policy; specif[ically], the right of a president or other head of state to keep official records and papers secret.

*Executive Privilege*, Black's Law Dictionary (12th ed. 2024). Judge Ademiluyi's emails would not be protected from disclosure by executive privilege.

That the inappropriate comments at issue were made to members of her staff or other judges, and not overheard by or made to members of the general public, does not mean that Judge Ademiluyi's conduct did not violate Maryland Rules 18-101.2, 18-102.5(b) and (c), and 18-102.8(b). The standard for determining a violation of Maryland Rule 18-101.2 is not whether a judge's conduct actually undermined confidence in the independence, integrity, and impartiality of the judiciary, but instead an objective

reasonable person standard, *i.e.*, whether the judge's conduct would create in a reasonable person's mind a perception that the judge's ability to carry out judicial responsibilities with impartiality and integrity is impaired. <u>See</u> Md. R. 18-101.2 cmt. [5]. Of course, an actual impropriety on the part of the judge satisfies that standard, but the standard is not so limited as to require an actual impropriety for the MCJC to be violated. <u>See</u> <u>id.</u>

That a judge may be disciplined for making inappropriate comments and using vulgar language in the courtroom, criticizing colleagues in public, and speaking discourteously toward litigants—circumstances present in <u>Lamdin</u> and <u>Russell</u>—does not mean that those are the only circumstances in which a judge may demonstrate a lack of decorum and demeanor in violation of the MCJC. Nothing in Maryland Rules 18-101.2, 18-102.5(b) and (c), or 18-102.8(b) indicates that the Rules are violated only where a judge engages in specified conduct or conduct that is known to the public. And a judge need not use vulgar or offensive language to violate the MCJC where the judge's demeanor and communications otherwise demonstrate a lack of the patience, dignity, and courtesy required of a judge or shows that the judge has failed to cooperate with other judges in the administration of court business.[34]

---

[34]We are unpersuaded by Judge Ademiluyi's suggestion that Ms. Hurey's testimony should be accepted to the exclusion of everything else. As the Commission noted, it "considered Ms. Hurey's testimony that Judge Ademiluyi interacted appropriately with recent staff members and bailiffs." We see no clear error in the Commission's evident determination that Ms. Hurey's testimony was not reflective of Judge Ademiluyi's interactions with others. That Judge Ademiluyi may have interacted appropriately with one judiciary employee does not negate that, with many other employees, she engaged in conduct that lacked the cooperation, patience, dignity, and courteousness required of a judge under Maryland Rules 18-102.5 and 18-102.8(b).

The Commission's findings of fact demonstrate that Judge Ademiluyi engaged in an "unyielding pattern" of making wholly inappropriate remarks to and about her staff and other judges, that she failed to cooperate with other judges in the administration of court business, and that she failed to comply with the reasonable directives of a judge with supervisory authority. Russell, 464 Md. at 430 n.21, 211 A.3d at 450 n.21. With such conduct, Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2(a), 18-102.5(b) and (c), and 18-102.8(b).

### (4) Compliance with Directives, Protocols, and Procedures

The Commission concluded that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.5, and 18-102.8(b) by failing to cooperate with the Committee and to comply with reasonable directives, protocols, and procedures. The Commission found, by clear and convincing evidence, that Judge Ademiluyi "failed to abide by multiple courthouse protocols, including for the training of new trial judges, the continuance of cases, and reporting for work, and that her conduct in doing so at times lacked patience, dignity, and courtesy." The Commission also found that, during training, Judge Ademiluyi failed to be present in the courthouse on assigned days, failed to attend scheduled meetings, or was habitually tardy.

Additionally, the Commission found that Judge Ademiluyi disregarded policies and procedures concerning continuances in family cases when, in August 2022, she continued the Richardson matter beyond the try-by date without contacting or getting approval from Judge Woodall, who served as the Family Coordinating Judge at that time. And, the Commission found that Judge Ademiluyi failed to comply with notice requirements for

sick leave.

Judge Ademiluyi contends that her training was "inordinately delayed" due to the COVID-19 emergency and the many months when no jury trials were conducted. Judge Ademiluyi asserts that, by March 23, 2022, she had "discovered evidence that Judge [Tillerson] Adams appeared to be improperly monitoring her emails and forged her signature on at least one order[,]" and she "suspected Judge [Tillerson] Adams forged her signature on other cases." Judge Ademiluyi "filed a complaint with the Commission in February 2022 against Judges [Tillerson] Adams and Cotton." Judge Ademiluyi maintains that other judges "were pressured to put in writing that they had difficult experiences with [her] in order to assist" Judge Tillerson Adams in retaliating against her. In sum, Judge Ademiluyi contests all of the Commission's conclusions of law in this area and contends that she did not engage in sanctionable conduct that would constitute a failure to comply with the directives, protocols, or procedures of Judge Tillerson Adams or the circuit court.

We overrule Judge Ademiluyi's exceptions and conclude that clear and convincing evidence supports the Commission's conclusion that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.5(b) and (c), and 18-102.8(b). After receiving the Letter of Cautionary Advice in January 2022, Judge Ademiluyi continued to refuse to cooperate with reasonable requests from Judge Tillerson Adams to complete the training required for new judges, failed to cooperate with Judge Tillerson Adams and other judges in the administration of the court's training program, and demonstrated a lack of courtesy in her interactions with the judges, all of which constituted conduct inconsistent with promoting public confidence in the integrity of the judiciary. Judge Ademiluyi's failure to cooperate

with Judge Tillerson Adams and other judges in the administration of court business and lack of courtesy in dealing with the judges was evidenced by her own emails refusing to participate in training with Judge Davey in March 2022 and meet with Judge Tillerson Adams on July 1, 2022 to discuss the Lambright trial, as well as by Judge Serrette's testimony, which the Commission found credible, that Judge Ademiluyi refused to discuss the Lambright trial with her while she was designated the training judge. Judge Ademiluyi also failed to cooperate with Judge Gill Bright, who was the training judge when Judge Ademiluyi presided over jury selection in a civil case in March 2022. In one instance, Judge Ademiluyi was over an hour late, was unprepared, refused to sit in the courtroom with Judge Gill Bright as required under the training protocol, and did not meet with Judge Gill Bright afterward as requested to discuss the training.

Judge Ademiluyi's lack of cooperation with, and failure to comply with reasonable directives of, Judge Tillerson Adams was apparent. After Judge Tillerson Adams contacted Judge Ademiluyi about giving up leave so that she could be assigned to a criminal jury trial, rather than promptly respond, Judge Ademiluyi responded over a month later by advising Judge Tillerson Adams that she did not have authority to administer the training program. Even after being assigned a criminal jury trial in the Lambright case, Judge Ademiluyi displayed a lack of cooperation with both Judge Serrette, the training judge for the Lambright trial, and Judge Tillerson Adams. Judge Ademiluyi suspended the Lambright trial to conduct a Daubert hearing without consulting Judge Serrette, i.e., without Judge Serrette's knowledge (in her absence), and rebuffed Judge Serrette's attempts to discuss the matter. With these acts, Judge Ademiluyi failed to comply with a

reasonable directive of a judge with supervisory authority and also failed to cooperate with judges in the administration of court business.

To be sure, Judge Ademiluyi's training may have been delayed due to the COVID-19 emergency and the circumstance that jury trials were not being conducted, but that does not account for Judge Ademiluyi's lack of cooperation in participating in training in March 2022 and thereafter or her lack of courtesy in interacting with Judge Davey, Judge Serrette, and Judge Gill Bright, who were designated training judges, and Judge Tillerson Adams, the Administrative Judge. In failing to cooperate with the Administrative Judge and judges to whom she was assigned for training, and by demonstrating a lack of courtesy in communicating with the judges, Judge Ademiluyi violated Maryland Rules 18-101.2, 18-102.5(b) and (c) and 18-102.8.

In addition, Judge Ademiluyi failed to comply with case management and leave policies. In the Richardson case, Judge Ademiluyi continued a matter beyond the try-by date without contacting or receiving approval from Judge Woodall, who, at that time, was the Family Coordinating Judge. The Commission noted that, in an email regarding the Richardson matter, Judge Woodall explained the continuance policy to Judge Ademiluyi and that Judge Ademiluyi then filed a memorandum to counsel in the Richardson case setting forth her position about the continuance and disagreement with Judge Woodall. Judge Tillerson Adams directed Judge Ademiluyi to meet with her to discuss the issue, but Judge Ademiluyi refused to participate unless the meeting was on the record with counsel in Richardson. Although Judge Ademiluyi argues that there was conflicting evidence at the hearing about the applicable time standards in the Richardson matter, the Commission

noted that Judge Woodall explained the applicable standard in an email to Judge Ademiluyi and found that Judge Ademiluyi continued the matter beyond the try-by-date without notifying Judge Woodall or receiving approval to do so. We see no basis on which to disturb the Commission's finding.

Judge Ademiluyi also failed to notify Judge Tillerson Adams that she would not be working for over two weeks. The record shows that, on the evening of August 2, 2022, Judge Ademiluyi emailed Judge Tillerson Adams stating that she was ill and could not come to the courthouse the next day, August 3, 2022. On August 18, 2022, Judge Tillerson Adams emailed Judge Ademiluyi because she had been advised by Human Resources that Judge Ademiluyi had not been at work since August 3, 2022. Judge Tillerson Adams had not had any correspondence from Judge Ademiluyi regarding being absent from work since her email of August 2, 2022.[35]

Clear and convincing evidence supports the Commission's conclusion that, by failing to cooperate with reasonable directives of a judge with supervisory authority, follow courthouse protocols, including those related to the training of new trial judges, the

---

[35]A revised Maryland Judiciary Policy on Judicial Absences became effective on April 1, 2017, and was in effect at the time that Judge Ademiluyi served as a circuit court judge. Section (d) of the Policy authorizes each County or District Administrative Judge to develop a written Absence Plan "for scheduling all judicial absences from court(s) under the Administrative Judge's control[.]" Section (g)(1) of the Policy states that, "[f]or each period of absence due to a judge's illness, disability, or medical care (as prescribed by Maryland Rule 18-601), including Family Care Leave, a request for permission to be absent from court shall be made as soon [as] practicable and no later than the time set in the applicable plan." Section (b)(1)(D) and (G) of the Policy state that the County Administrative Judge (or a judge who serves as the authorized designee, by express written designation) is the administrative head for a circuit court judge of that county.

continuance of cases, and reporting for work, and by displaying a lack of courtesy to others in the process, Judge Ademiluyi engaged in conduct that violated Maryland Rules 18-101.1, 18-101.2, 18-102.5(b) and (c), and 18-102.8(b).

### *(5) Conduct Related to Criminal Jury Trial and Criminal Defendants Generally*

Maryland Rule 18-102.2(a) (Impartiality and Fairness) provides: "A judge shall uphold and apply the law and shall perform all duties of judicial office impartially and fairly."

Maryland Rule 18-102.3 (Bias, Prejudice, and Harassment) provides:

(a) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(b) In the performance of judicial duties, a judge shall not, by words or conduct, manifest bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation. A judge shall require attorneys in proceedings before the court, court staff, court officials, and others subject to the judge's direction and control to refrain from similar conduct.

(c) The restrictions of section (b) of this Rule do not preclude judges or attorneys from making legitimate references to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Maryland Rule 18-102.9 (Ex Parte Communications) provides in pertinent part:

(a) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge out of the presence of the parties or their attorneys, concerning a pending or impending matter, except as follows:

\* \* \*

(3) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding if the judge (A) makes provision promptly to notify all of the parties as to the expert consulted and the substance of the

advice, and (B) affords the parties a reasonable opportunity to respond.

(4) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge does not decide a case based on adjudicative facts that are not made part of the record, and does not abrogate the responsibility personally to decide the matter.

* * *

(b) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(c) A judge shall not investigate adjudicative facts in a matter independently, and shall consider only the evidence in the record and any facts that may properly be judicially noticed.

(d) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

Maryland Rule 18-102.11(a)(4) and (c) (Disqualification) provide:

(a) A judge shall recuse[36] in any proceeding in which the judge's impartiality might reasonably be questioned, including the following circumstances:

* * *

(4) The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

* * *

---

[36]On March 1, 2024, this Court adopted amendments to Maryland Rule 18-102.11(a) and (a)(3), replacing "disqualify himself or herself" with "recuse" and "he or she" with "the judge[,]" which became effective on July 1, 2024. Supreme Court of Maryland, Rules Order at 2-3, 68-69 (Mar. 1, 2014), https://www.courts.state.md.us/sites/default/files/rules/order/ro220.pdf [https://perma.cc/2QA9-BZ5L].

- 73 -

(c) A judge subject to disqualification under this Rule, other than for bias or prejudice under subsection (a)(1) of this Rule, may disclose on the record the basis of the judge's disqualification and may ask the parties and their attorneys to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and attorneys agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.

The Commission found, by clear and convincing evidence, that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.2(a), 18-102.3, 18-102.5, 18-102.9, 18-102.11(a)(4) and (c), and 18-104.4(a), (b), and (d) by displaying bias and a lack of impartiality in her handling of the Lambright trial and against criminal defendants generally. The Commission explained:

> [Judge Ademiluyi]'s 2020 campaign statements could reasonably have been perceived as promising or committing to a particular result or rule in cases alleging sexual violence such as the *Lambright* case. Nonetheless, [Judge Ademiluyi] did not recuse herself from the *Lambright* case or disclose to the parties that she had made the above statements during her campaign. By independently investigating the reliability of the Cortexflo camera, failing to disclose same to the parties, deciding to revisit her evidentiary rulings (in the absence of her training judge) after the defendant had testified, and then taking judicial notice of the camera's reliability (over objection), [Judge Ademiluyi] lacked impartiality and acted in a manner that was biased against the defendant.

The Commission found that Judge Ademiluyi displayed bias against criminal defendants in general when she advised her law clerk that she does not grant requests for drug and alcohol evaluations in criminal cases because they are "a way to get out of prison" and instructed her law clerk to find "substantive grounds" on which to deny a pending request. Judge Ademiluyi stated that she has never granted such a request by a criminal defendant.

Judge Ademiluyi excepts to the Commission's conclusions that she violated the MCJC by displaying improper bias during the Lambright trial or toward criminal defendants in general. Among other things, Judge Ademiluyi contends that "the Commission lacks subject matter jurisdiction to decide whether a Judge is biased in rape cases simply because she publicly discloses prior to coming to the bench that she is a survivor of rape." Judge Ademiluyi argues that her decision not to recuse or disclose her experience is a discretionary matter and thus not sanctionable conduct. Judge Ademiluyi asserts that the Commission's finding that she relied on evidence not contained in the record during the Lambright trial is incorrect.

We overrule Judge Ademiluyi's exceptions. Clear and convincing evidence supports the Commission's conclusion that Judge Ademiluyi violated Maryland Rules 18-101.1, 18-101.2, 18-102.2(a), 18-102.3(a), 18-102.5(b) and (c), 18-102.9(a) and (c), 18-102.11(a)(4) and (c) in her handling of the Lambright trial and with respect to criminal defendants generally. With both her conduct during the Lambright trial and statements to her law clerk concerning requests for drug and alcohol evaluations by incarcerated people and instruction to her law clerk to find a ground to deny a pending matter, Judge Ademiluyi failed to fairly and impartially perform the duties of her office. Judge Ademiluyi's conduct during the Lambright trial and her instruction to her law clerk demonstrate her inability to comport herself in the most basic of manner required of a judge—to be fair and impartial.

The following sequence of events demonstrates that, during the Lambright trial, Judge Ademiluyi predetermined to admit into evidence photographs taken by the Cortexflo camera after having conducted an investigation of facts concerning the camera's reliability

- 75 -

on her own, withheld information from the parties, and held what can only be described as a sham <u>Daubert</u> hearing on the matter:

- Despite her initial ruling in the <u>Lambright</u> trial in Judge Serrette's presence denying admission of photographs taken by the Cortexflo camera, Judge Ademiluyi revisited the issue and advised the parties that she would conduct a <u>Daubert</u> hearing.

- While Judge Serrette was not in the courtroom, Judge Ademiluyi ordered that the trial be suspended and that a <u>Daubert</u> hearing be scheduled.

- Judge Ademiluyi ordered a <u>Daubert</u> hearing on evidence that had been excluded during the State's case, after the State rested and after the defendant had already testified.

- Judge Ademiluyi did so even though neither party had requested a <u>Daubert</u> hearing, Mr. Lambright's counsel objected, and the prosecutor advised that the State was not prepared for a <u>Daubert</u> hearing.

- Prior to advising the parties of her decision to revisit the issue, Judge Ademiluyi had already begun conducting her own investigation of the matter and had told her law clerk that she could take judicial notice, on her own initiative, of publications allegedly showing that the Cortexflo "camera is widely known and used."

- After ordering the <u>Daubert</u> hearing, Judge Ademiluyi continued to investigate the Cortexflo camera on her own and reached out to the FJC to obtain literature about the camera.

- The day before the scheduled hearing, Judge Ademiluyi told her law clerk that the camera technology was "reliable" and that she just needed "to make a finding on the record."

- On the day of the scheduled hearing, the State argued against holding a Daubert hearing.

- Without disclosing to the parties the extent of her contact with the FJC or the written material, *i.e.*, the brochure, she had obtained, Judge Ademiluyi admitted the photographs into evidence, after the State had rested its case and in the absence of any motion by the State to reopen its case.

- Judge Ademiluyi found that the Cortexflo camera had widespread use and the technology was reliable, even though there was no evidence to support the findings—except her own covert research into the matter.

- When Judge Serrette attempted to discuss the matter with her, Judge Ademiluyi refused to speak with her.

Judge Ademiluyi's actions in the Lambright trial violated the most basic obligation of a judge to perform the duties of judicial office fairly and impartially. This conclusion does not depend on a determination that Judge Ademiluyi's conduct was motivated by the sentiments expressed in her campaign video and blog post about the Me Too movement or a pledge to help victims or survivors of sexual assault. Judge Ademiluyi's conduct in stopping a criminal trial—after the State had rested and the defendant had already testified—to revisit an evidentiary ruling previously decided against the State, issuing a predetermined decision to admit additional evidence against the defendant after having

conducted her own investigation, and withholding information about the extent of her investigation, standing alone, demonstrated bias against the defendant and a failure to perform judicial duties in a fair and impartial manner.[37]

To be clear, we do not conclude that Judge Ademiluyi committed sanctionable conduct by making a legal error in holding a Daubert hearing or admitting the photographs taken by the Cortexflo camera. Although Judge Ademiluyi plainly abused her discretion with her conduct during the Lambright trial, this is not the basis of our conclusion that she violated in MCJC in her handling of the trial. Rather, we conclude that, based on her conduct during the Lambright trial, Judge Ademiluyi demonstrated bias against the defendant and failed to acquit her office fairly and impartially and, in the process, violated the MCJC.

In addition, Judge Ademiluyi's remarks about not granting requests for drug and alcohol abuse evaluations displayed bias and violated the duty to be fair and impartial. In communications with her law clerk about motions from incarcerated people seeking drug and alcohol evaluations, Judge Ademiluyi stated that such motions were just "a way to get out of prison[,]" and that she would not permit "inmates to turn [her] into a means to avoid

_____

[37]Judge Ademiluyi raises arguments such as that the Commission "lacks subject matter jurisdiction to decide whether a Judge is biased in rape cases simply because she publicly discloses prior to coming to the bench that she is a survivor of rape" and that the Commission improperly concluded that her decisions were wrong because "she is rape survivor [sic] and, therefore, she must be biased." The Commission has not alleged, however, that Judge Ademiluyi is biased in rape cases simply because she has publicly disclosed that she is a survivor of sexual assault. Rather, the Commission has alleged and proven that Judge Ademiluyi's conduct during the Lambright trial demonstrated bias and that she did not perform the duties of her office fairly and impartially.

the parole board." Judge Ademiluyi boasted that that she had yet to release anyone from prison and told the law clerk that most of the motions were filed *pro se* and she denied them. With these remarks, Judge Ademiluyi indicated that she was not individually evaluating each case on its merits, but rather was looking for ways to reach a blanket outcome that would not release prisoners from jail. Consistent with this mindset, Judge Ademiluyi instructed her law clerk to find a "substantive ground" on which to deny the pending motion. Judge Ademiluyi's statements to her law clerk displayed bias against criminal defendants and demonstrated that she had not performed this aspect of the duties of her office fairly and impartially, *i.e.*, she had not handled requests for drug and alcohol evaluations by incarcerated defendants fairly and impartially.

We are not persuaded that the emails between Judge Ademiluyi and her law clerk in which she made the statements about drug and alcohol evaluation requests were "privileged communications" that the Commission was not entitled to access or were statements that have been take out of context. The email chain at issue shows the following. Judge Ademiluyi's law clerk emailed her about a case in which a defendant seemed to be ineligible for parole given his sentence and explained that a Fourth Circuit case may be applicable to an issue raised by the defendant. Within a few minutes, Judge Ademiluyi responded, noting that the Fourth Circuit did not bind the circuit court and stating that the law clerk should "[r]eview vertical stare decisis." A little over two hours later, Judge Ademiluyi emailed the law clerk again, stating:

> You will see drug and alcohol evaluations request frequently. It's a way to get out of prison! Assess procedural and substantive grounds to deny the motion. Here, even if he had completed half his sentence, would drug and

alcohol evaluation be appropriate?  I don't allow inmates to turn me into a means to avoid the parole board.  I have yet to release anyone from prison. Most of the motions are filed pro se and I deny them.

The email from Judge Ademiluyi to her law clerk shows that she made extraneous comments about drug and alcohol evaluations being used to get out of prison, that she had not released anyone from prison, and that she denies such motions.  Given that Judge Ademiluyi has not identified a privilege, other than the executive privilege which does not apply, it is clear she has not demonstrated that her remarks would be shielded under a privilege such as the judicial privilege, which may protect confidential judicial communications.  "A party raising a claim of judicial privilege has the burden of demonstrating that the matters under inquiry fall within the confines of the privilege.  The judicial privilege is grounded in the need for confidentiality in the effective discharge of the [] judge's duties."  In the Matter of Certain Complaints under Investigation by an Investigating Comm. of the Jud. Council of the Eleventh Cir., 783 F.2d 1488, 1520 (11th Cir. 1986).  To the extent that Judge Ademiluyi claimed that any emails were privileged communications, she had the burden of identifying a privilege and demonstrating that it applies.  She has not done so.  Judge Ademiluyi has not demonstrated that an email in which she took an opportunity to gratuitously express biased views to her law clerk would be covered by any identifiable privilege.[38]  There is also no indication that her remarks

---

[38]Law clerks are, of course, bound by confidentiality agreements with the judiciary and perhaps additionally by individual confidentiality agreements with the judges for whom they work.  Our determination that Judge Ademiluyi's emails would not be protected from disclosure by executive privilege and that Judge Ademiluyi has not demonstrated that her remarks in emails to her law clerk would be shielded under a

about not granting requests for evaluations have been taken out of context. Judge Ademiluyi wrote what she wrote and there is no reason to conclude that she meant anything other than what she said.

With her conduct during the Lambright trial and remarks about defendants who request drug and alcohol evaluations, Judge Ademiluyi violated Maryland Rule 18-101.2 by failing to act in a manner that promoted public confidence in the independence, integrity, and impartiality of the judiciary and by failing to avoid conduct that would create in reasonable minds a perception of impropriety. "Public confidence in the judiciary is eroded by improper conduct and conduct that creates the appearance of impropriety." Md. R. 18-101.2 cmt. [1]. With the same conduct, Judge Ademiluyi violated Maryland Rule 18-102.2(a), which requires that a judge uphold and apply the law and perform the duties of judicial office impartially and fairly. "To ensure impartiality and fairness to all parties,

different privilege should not be read in any way to undermine the validity or enforceability of confidentiality agreements between a law clerk and the judiciary and between a law clerk and an individual judge. Nothing in this opinion should be read as negating the validity or enforceability of the judiciary's Policy on Confidentiality, which is set forth in Section 3.1 of the Judiciary Employee Handbook and, pursuant to Section 3.1(a)(2), applies to, among others, "all persons employed by a court, unit, judicial entity, or office organized within the Judicial Branch including regular, temporary, and contractual employees regardless of the source of the employee's compensation (*e.g.*, county, state, federal, or grant)[.]" Division of Human Resources, Maryland Judiciary, Judiciary Employee Handbook, 3.1 Policy on Confidentiality at 1, available at https://www.mdcourts.gov/sites/default/files/import/employeehandbook/pdfs/confidentiality.pdf [https://perma.cc/29S6-XYJ6]; see also Confidentiality Agreement for Employees of the Maryland Judiciary, available at https://www.mdcourts.gov/sites/default/files/import/employeehandbook/pdfs/confidentialityagreement.pdf [https://perma.cc/4TUR-AE89] (The Confidentiality Agreement provides, among other things, that an employee of the Maryland Judiciary "will hold confidential information received or produced because of [the employee's] employment with the Judiciary in strict confidence and will exercise a reasonable degree of care to prevent disclosure to others.").

a judge must be objective and open-minded." Md. R. 18-102.2 cmt. [1]. Judge Ademiluyi also violated Maryland Rule 18-102.3(a) by failing to perform the duties of judicial office without bias or prejudice. See Md. R. 18-102.3 cmt. [1] ("A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.").[39]

With her conduct in the Lambright trial, Judge Ademiluyi violated Maryland Rule 18-102.9(a) and (c) by considering communications made to her out of the presence of the parties and their attorneys concerning a pending matter, investigating adjudicative facts in a matter independently, and failing to consider only evidence in the record and any facts that may properly be judicially noticed. Judge Ademiluyi initiated contact with the FJC to obtain information about the Cortexflo camera, i.e., investigated the reliability of the camera on her own and considered information she received from the FJC out of the presence of the parties or their attorneys and without the information having been admitted into evidence. Although Judge Ademiluyi mentioned during the Daubert hearing that she had discovered that the FJC uses the Cortexflo camera, she failed to advise the parties that she had initiated contact with the FJC or of the extent of what she learned. As Mr. Lambright's counsel pointedly stated, he was not privy to the information that Judge Ademiluyi had obtained.

_____

[39]In her interactions with Judge Tillerson Adams and Judge Serrette both during and after the Lambright trial, as discussed above and in the sections of the opinion concerning decorum and demeanor and compliance with directives, protocols, and procedures, Judge Ademiluyi violated Maryland Rule 18-102.5(b) and (c) by failing to cooperate with other judges in the administration of court business and by failing to comply with reasonable directives of a judge with supervisory authority.

- 82 -

Judge Ademiluyi gathering information from the FJC does not fall under the exceptions set forth in Maryland Rule 18-102.9(a).  For example, in contacting the FJC, Judge Ademiluyi did not obtain the advice of a disinterested expert on the law applicable to the proceeding after promptly notifying all of the parties as to the expert consulted and the substance of the advice and affording the parties a reasonable opportunity to respond.  See Md. R. 18-102.9(a)(3).  Judge Ademiluyi's communication with the FJC also cannot be characterized as a consultation with officials or court staff "whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities . . . ."  Md. R. 18-102.9(a)(4).  Ms. Myers-Martin, who had served as the Deputy Director of the FJC, testified at the disciplinary hearing that the FJC is an initiative of the Circuit Court for Prince George's County that "serves victims of domestic violence, sexual assault, human trafficking, and elder abuse of Prince George's County."  The FJC's function is to assist victims of certain criminal offenses, not to aid a judge in carrying out the judge's adjudicative responsibilities.  Therefore, the exception set forth in Maryland Rule 18-102.9(a)(4) does not apply.  At bottom, Judge Ademiluyi initiated and considered communications with the FJC to which the parties were not privy, she investigated adjudicative facts independently, and, in admitting the photographs taken by the Cortexflo camera, she considered information that was not in the record and that could not properly be judicially noticed, all in violation of Maryland Rule 18-102.9(a) and (c).

Judge Ademiluyi violated Maryland Rule 18-102.11(a)(4) by failing to disqualify herself in a proceeding in which her impartiality might reasonably be questioned.  Contrary to Judge Ademiluyi's contention, a judge's decision concerning disqualification may

involve conduct that is subject to discipline under the MCJC. See Md. R. 18-102.11(a)(4); Md. R. 18-104.4(b), (d)(3). Under the circumstances of this case, clear and convincing evidence supports the Commission's conclusion that, where Judge Ademiluyi previously made statements in campaign materials constituting a promise or commitment to assist victims or survivors of sexual assault offenses, her impartiality might reasonably have been questioned as the presiding judge in a case involving rape charges.

Judge Ademiluyi also violated Maryland Rule 18-102.11(c). Judge Ademiluyi had the option of either disqualifying herself from participation in the Lambright trial pursuant to Maryland Rule 18-102.11(a)(4) or making a voluntary disclosure pursuant to Maryland Rule 18-102.11(c). Judge Ademiluyi did neither. In the absence of disqualification, by not electing to make a disclosure concerning the content of her campaign materials, Judge Ademiluyi also violated Maryland Rule 18-102.11(c). Although Maryland Rule 18-102.11(c) provides that a judge "may" make a disclosure concerning the basis of the judge's disqualification, Maryland Rule 18-102.11 cannot be read to mean that, where disqualification would be required under section (a), a judge may decline to disqualify from a proceeding in which the judge's impartiality might reasonably be questioned and also elect not to make a disclosure of the basis for disqualification and ask the parties to consider waiver under section (c) of the Rule. Maryland Rule 18-102.11(c) does not provide that a judge who does not recuse under section (a) may also elect to not disclose a mandatory

ground for disqualification.[40]

## C. Contentions Other than Exceptions

In a memorandum of law in support of her exceptions, Judge Ademiluyi makes various contentions that do not track her exceptions to the Commission's conclusions of law. First, Judge Ademiluyi contends that her due process rights were violated because Investigative Counsel failed to produce unredacted files related to her complaints against Judge Tillerson Adams and Judge Cotton and instead "provided a substantially incomplete and heavily redacted file[.]" Judge Ademiluyi argues that the unredacted files contained exculpatory material and that, under Maryland Rules 18-433 and 2-402, she was entitled to the information. The Commission responds that it provided exculpatory information to Judge Ademiluyi pursuant to Maryland Rule 18-433 and that she has not shown prejudice.

The record demonstrates that the Commission fulfilled its duty to provide procedural due process in connection with its proceedings. Maryland Rule 18-432 states that a judge has the right to:

(1) conduct discovery pursuant to Rule 18-433;

(2) receive a prompt hearing on the charges in accordance with Rule 18-434;

(3) procure the issuance of subpoenas for the attendance of witnesses and for the production of documents and other tangible things;

---

[40]In the section concerning conduct as a candidate for election, *supra*, we concluded that clear and convincing evidence supports the Commission's conclusion that Judge Ademiluyi violated Maryland Rule 18-104.4(a), (b), (d)(1), and (d)(3) with her conduct as a candidate in the 2020 election. It is not necessary for us to address the Commission's conclusion that Judge Ademiluyi's conduct related to the Lambright case and criminal defendants generally constitute violations of Maryland Rule 18-104.4(a), (b), (d)(1), and (d)(3).

(4) present evidence and argument; and

(5) examine and cross-examine witnesses.

Maryland Rule 18-433(a)(2) provides, in relevant part, that the Chair of the Commission "may limit the scope of discovery, enter protective orders permitted by Rule 2-403, and resolve other discovery issues."

Based on the record, we agree with the Commission that there are no grounds on which to conclude that it violated its duty to provide exculpatory information or did not comply with its obligations under the Maryland Rules in this case. Other than claiming that unredacted files concerning her complaints against Judge Tillerson Adams and Judge Cotton contained exculpatory information, Judge Ademiluyi has not described what the exculpatory information is. In addition, Judge Ademiluyi has not demonstrated that she was entitled to full investigative files concerning complaints made against other judges, even if she was the complainant.

Next, Judge Ademiluyi contends that all of the members of the Commission should have recused themselves. According to Judge Ademiluyi, the Commission's alleged failure to provide exculpatory evidence and bringing of charges against her in a second case show that "[t]he Commission cannot be impartial" and that recusal was necessary. Judge Ademiluyi asserts that the Commission's determination that Judge Tillerson Adams and Judge Cotton did not engage in sanctionable conduct demonstrates the Commission's lack of impartiality, and that a reasonable explanation for the Commission's finding was "the negotiation of a dismissal in exchange for" Judge Tillerson Adams's resignation. Judge Ademiluyi also contends that, because the members of the Commission who

reviewed her complaints against Judge Tillerson Adams and Judge Cotton are the same members who made the decision to charge her in this case, under Maryland Rule 18-411(c), the Commissioners should have recused themselves from participation in the decision to charge her.

As to recusal of the Commission members, Maryland Rule 18-411(c) provides that a member shall not participate in any discussion, disposition, or proceeding in which, among other things, "the member's impartiality might reasonably be questioned, [] the member has personal knowledge of disputed evidentiary facts involved in the proceeding, or" recusal is otherwise required by the MCJC. Judge Ademiluyi's bald allegation that the Commission members should have recused themselves due to the appearance of impartiality and bias does not make it so. There is no evidence indicating that a Commission member's impartiality might reasonably have been questioned or that a Commissioner had personal knowledge of disputed facts concerning Judge Ademiluyi's case or "demonstrable personal ties to [her] or the outcome of [the] proceeding that would [have] influence[d their] review of the evidence." Russell, 464 Md. at 403, 211 A.3d at 434. Information that a Commissioner learns as a result of service as a Commissioner does not constitute personal knowledge. Cf. Boyd v. State, 321 Md. 69, 76, 581 A.2d 1, 4 (1990) (In addressing whether a trial judge, who had acquired information as a result of prior judicial proceedings involving the petitioner's codefendants, erred in refusing to recuse himself, we explained that information acquired during prior judicial proceedings is not "personal knowledge or bias requiring disqualification" and that "personal" as used in the MCJC "means knowledge acquired from extrajudicial sources." (Cleaned up)).

Judge Ademiluyi contends that the Commission was biased against her and that its bias resulted in her whistleblower[41] defense being precluded and affected the Commission's findings, conclusions, and recommendations. Judge Ademiluyi argues that the Commission sought to punish her "because she 'complained' about the illegal activity of other Judges" and that it is a violation of the First Amendment and the Maryland Declaration of Rights to punish judges who are whistleblowers. Essentially, Judge Ademiluyi alleges that she has a whistleblower defense because she filed complaints against Judge Tillerson Adams and Judge Cotton and the Commission did not allow her to present evidence of the defense. However, other than alleging that she has a whistleblower defense and that it was a violation of the First Amendment and the Maryland Declaration of Rights for the Commission to recommend discipline, Judge Ademiluyi has not provided any information about the defense, such as the applicable standard of proof or what she contends must be demonstrated to establish the defense and that she has satisfied the requirements. And, even if the Commission had permitted Judge Ademiluyi to introduce evidence at the disciplinary hearing concerning complaints she made about other judges, this would not have relieved Judge Ademiluyi of her obligation to comply with the MCJC.

Judge Ademiluyi contends that other due process violations have occurred, including "trial by ambush" and the failure of two judges to recuse themselves. Judge Ademiluyi argues that "the volume and pace of the litigation in this matter" raise due

---

[41]A whistleblower is "[a]n employee who reports employer wrongdoing to a governmental or law-enforcement agency." *Whistleblower*, Black's Law Dictionary (12th ed. 2024).

process concerns and asserts that she "did not have the time or resources to depose potential witnesses" or "review all the documents exchanged." Judge Ademiluyi maintains that the Honorable Mark S. Chandlee, who served as Chair of the Judicial Inquiry Board[42] in this case, should have recused himself because, according to Judge Ademiluyi, he is "a friend and strong supporter of" Judge Tillerson Adams. Judge Ademiluyi also contends that the Honorable Michele D. Hotten, now a Senior Justice of this Court, should have recused herself because, according to Judge Ademiluyi, it is "well known she has a personal relationship" with Judge Tillerson Adams. Judge Ademiluyi asserts that she, Judge Chandlee, and Justice Hotten are "connected" through the Seventh Judicial Circuit, which includes Prince George's County, and that "[t]here is a presumption of bias if a Judge's personal litigation is decided by colleagues in the same circuit."

We discern no basis for the allegation that Judge Ademiluyi has been subject to trial by ambush or rushed proceedings in this matter. The procedural history of the case before the Commission demonstrates the following. On June 29, 2023, charges were filed against Judge Ademiluyi. On July 27, 2023, Judge Ademiluyi, through counsel, filed a response to the charges. In response to Judge Ademiluyi's memorandum, the Commission provided the following information about procedural history of the case: On July 28, 2023, the Commission issued a scheduling order, which included deadlines for the designation of

---

[42]The Judicial Inquiry Board is appointed by this Court and consists of two judges, two attorneys, and three public members who are not attorneys or judges, see Md. R. 18-412(a)(1)(A), who, among other things, review the reports and recommendations made to it by Investigative Counsel and any matters referred to it by the Commission, see Md. R. 18-423(a).

witnesses, the completion of discovery, and other filings, and designated December 13, 14, 20, and 21, 2023 as the hearing dates. On September 21, 2023, the Commission issued an order granting a joint motion to modify the scheduling order, which extended the deadline to complete the discovery to November 6, 2023. On October 5, 2023, the Commission record was provided to Judge Ademiluyi. On October 31, 2023, Investigative Counsel and Judge Ademiluyi filed pre-hearing statements. On November 1, 2023, Investigative Counsel filed an amended pre-hearing statement. On November 6, 2023, the Commission conducted a pre-hearing conference.

Over a month later, on December 13, 14, 20, and 21, 2023, as scheduled, the Commission conducted the hearing in this matter. At all times, Judge Ademiluyi was represented by counsel. The hearing in the case occurred approximately five and a half months after the filing of the charges and the hearing was scheduled over four months in advance. There were over three months in which to conduct discovery, the Commission record was provided to Judge Ademiluyi over a month before the discovery deadline, and the hearing occurred over five weeks after the discovery deadline. What can be gleaned from the procedural history is that there is no evidence that Judge Ademiluyi was subjected to "trial by ambush" or proceedings that were rushed.

As to recusal of Judge Chandlee, other than Judge Ademiluyi claiming that Judge Chandlee is a supporter and friend of Judge Tillerson Adams, there is nothing in the record demonstrating that Judge Chandlee's impartiality might reasonably be questioned or that

his recusal was otherwise required by the MCJC.[43] With respect to both Judge Chandlee and Justice Hotten, we decline to conclude that a presumption of bias exists merely because Judge Chandlee and Justice Hotten have served in the same judicial circuit as Judge Ademiluyi.[44]

### D. Disposition

The Maryland Constitution provides that, "[u]pon any recommendation of the Commission, . . . after a hearing and upon a finding of misconduct while in office, or of persistent failure to perform the duties of the office, or of conduct prejudicial to the proper administration of justice," this Court may remove a "judge from office or may censure or otherwise discipline" the judge. Md. Const. art. IV, § 4B(b)(1). Maryland Rule 18-437(f)(1) provides, among other things, that this Court may "impose the disposition recommended by the Commission or any other disposition permitted by law[.]" Although the Commission's "recommendation is entitled to great weight, the Maryland Constitution vests this Court with the ultimate authority to impose sanctions on judicial officers." Nickerson, 473 Md. at 533, 251 A.3d at 1100 (cleaned up). The MCJC provides:

> Whether discipline should be imposed should be determined through a reasonable and reasoned application of the Rules and should depend upon factors such as the seriousness of the transgression, the facts and circumstances at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others.

---

[43]Maryland Rule 18-412(d)(1) provides for recusal of a member of the Judicial Inquiry Board on the same grounds that Maryland Rule 18-411(c) provides for the recusal of a member of the Commission.

[44]Justice Hotten determined that her disqualification under Maryland Rule 18-102.11 was not warranted.

Md. R. 18-100.1(b)(1)(B).

We are guided by the "duty to dispense discipline in a manner that preserves the integrity and independence of the judiciary and reaffirms, maintains, and restores public confidence in the administration of justice." Nickerson, 473 Md. at 533, 251 A.3d at 1100 (cleaned up). In imposing judicial discipline, we aim not to punish, but rather "to discourage others from engaging in similar conduct and to assure the public that the judiciary will not condone judicial misconduct." Id. at 533, 251 A.3d at 1100-01 (cleaned up). "The sanction must inform the public that we recognize that there has been judicial misconduct, must be sufficient to deter the offending judge from repeating the conduct in the future, and must be sufficient to deter others from engaging in similar conduct." Id. at 533, 251 A.3d at 1101 (cleaned up).

In Nickerson, id. at 514, 251 A.3d at 1089, we removed Judge Nickerson from the office of Judge of the Orphans' Court for Kent County. We determined that the Commission's conclusion that Judge Nickerson violated Maryland Rules 18-101.1, 18-101.2, 18-101.3, 18-103.1, and 18-102.16(a) was supported by clear and convincing evidence. See id. at 527, 251 A.3d at 1097. Judge Nickerson violated Maryland Rules 18-101.1 and 18-101.2 through conduct that consisted of impaired driving and related charges of which she was found guilty, and violated Maryland Rules 18-101.2, 18-101.3, and 18-103.1 in her interactions with a law enforcement officer during the stop, during which she mentioned her status as an orphans' court judge and attempted to gain favorable treatment. See id. at 529, 251 A.3d at 1098. Judge Nickerson also violated Maryland Rule 18-101.2 by displaying a lack of cooperation with the officer throughout the stop. See id. at 529,

251 A.3d at 1098-99. And, Judge Nickerson violated Maryland Rule 18-102.16(a) by, among other things, failing to timely satisfy the conditions of a conditional diversion agreement and failing to timely provide documentation in accord with the terms of a private reprimand. See id. at 530, 251 A.3d at 1099.

In addressing the appropriate sanction, we stated that "removing a judge from office is an extraordinary sanction" and "generally reserved for circumstances where there is no alternative to entering an order of removal." Id. at 533, 251 A.3d at 1101 (citation omitted). We noted that we had "only removed three judges from office in the history of this Court." Id. at 533, 251 A.3d at 1101 (citations omitted). In determining that the sanction of removal recommended by the Commission was appropriate, we explained that our decision "was based upon the totality of the circumstances comprising the multiple violations of the MCJC spanning two separate investigations." Id. at 534, 251 A.3d at 1101. We concluded that, "[t]hrough her inactions, [Judge Nickerson] demonstrated a lack of appreciation for the seriousness of her misconduct and the gravity of the Commission proceedings[,]" and she showed "an inability or unwillingness to undertake rather basic and reasonable requirements imposed by the Commission to ensure that she complie[d] with the laws and ethical requirements necessary for the position." Id. at 534, 251 A.3d at 1101. We concluded that removal from office "was the only outcome that would preserve the integrity of the judiciary, discourage others from engaging in similar conduct, and assure the public that the judiciary will not condone judicial misconduct." Id. at 534-35, 251 A.3d at 1101.

Previously, in In Re Diener and Broccolino, 268 Md. 659, 662, 669, 671, 304 A.2d

587, 589, 593-94 (1973), we removed from office two judges who, while serving as judges of the Traffic Division of the Municipal Court of Baltimore City, disposed "of parking ticket cases, reach[ed] verdicts of either 'not guilty,' or did suspend and/or reduce fines for reasons that can only be described as friendship, or political favoritism, or the importuning of court clerks." (Internal quotation marks omitted). The Commission determined that the two judges engaged in conduct prejudicial to the proper administration of justice. See id. at 669-70, 304 A.2d at 593-94. We concluded that the Commission's determination was supported by clear and convincing evidence and stated:

> Precisely what 'conduct prejudicial to the proper administration of justice' is or may be, in any or all circumstances, we shall not undertake to say. Indeed, a comprehensive, universally applicable definition may never evolve but it is unlikely we shall ever have much trouble recognizing and identifying such conduct whenever the constituent facts are presented.

Id. at 670-71, 304 A.2d at 594.

Although the Commission had recommended that the judges be censured, we saw "no alternative to the entry of an order removing them." Id. at 670-71, 304 A.2d at 594. We explained that we were not bound by the Commission's recommendation and that "[w]e have the power to disregard its recommendation entirely, or to ameliorate or increase the recommended sanction, all to the end that the interests of justice may be served." Id. at 689, 304 A.2d at 603. We observed that some would deem the decision to remove the judges as "unduly harsh[,]" but, under the circumstances, we saw "no reasonable alternative" to removal. Id. at 689, 304 A.2d at 603.

In In re Bennett, 301 Md. 517, 519, 483 A.2d 1242, 1243 (1984), "[f]or the second time in Maryland history[,]" we removed a judge from office. In that case, the Commission

- 94 -

found that Judge Bennett "sought the favor and political support of" a person who asked him to remove a traffic violation from someone else's driving record. Id. at 521-22, 483 A.2d at 1244. Judge Bennett made promises to the person that he would attempt to obtain a revised disposition of a guilty verdict entered by the Honorable Mary Ann Stepler in a traffic case. See id. at 522, 483 A.2d at 1244. Judge Bennett implied that he would use his judicial office to attempt to have the traffic violation deleted from the record of the person who was found guilty. See id. at 522, 483 A.2d at 1244. Judge Bennett "trace forge[d]" Judge Stepler's signature on an exception report or caused her signature to be forged. Id. at 522, 483 A.2d at 1244. The Commission unanimously recommended that Judge Bennett be removed from office. See id. at 522, 483 A.2d at 1244. We concluded that "[f]orgery of another judge's name to the change of the disposition in a traffic case . . . constitute[d] 'conduct prejudicial to the proper administration of justice.'" Id. at 536, 483 A.2d at 1251. We agreed with the Commission's recommendation and stated that we saw "no alternative to the entry of an order removing Judge Bennett from office." Id. at 536, 483 A.2d at 1251.

In other jurisdictions, State supreme courts have the power to remove judges from office and have done so. In In re McMillan, 797 So.2d 560, 573 (Fla. 2001), the Supreme Court of Florida agreed with the recommendation of the Judicial Qualifications Commission that a judge be removed from office. The judge had been charged with the following:

> (1) making explicit campaign promises to favor the State and the police in court proceedings; (2) making explicit promises that he would side against the defense; (3) making unfounded attacks on an incumbent county judge;

(4) making unfounded attacks on the local court system and local officials; and (5) improperly presiding over a court case in which he had a direct conflict of interest.

Id. at 562. The Supreme Court of Florida upheld the Commission's conclusion that the charges were established by clear and convincing evidence. See id. at 566. In assessing the appropriate discipline to be imposed, the Supreme Court stated that it "has recognized that the discipline of removal should not be imposed upon a judge unless the Court concludes that the judge's conduct is fundamentally inconsistent with the responsibilities of judicial office." Id. at 571 (cleaned up).

The Supreme Court of Florida stated "that the lack of bias and partiality is an essential prerequisite to service as a judicial officer" and that "[t]he impartiality of the trial judge must be beyond question." Id. (citation omitted). The Supreme Court stressed that "no other principle is more essential to the fair administration of justice than the impartiality of the presiding judge." Id. The Supreme Court concluded that removal of the judge was warranted based upon his cumulative misconduct, which demonstrated the judge's lack of fitness for office. See id. at 573.[45]

---

[45]In Jud. Inquiry and Rev. Comm'n of Va. v. Pomrenke, 806 S.E.2d 749, 751, 756 (Va. 2017), the Supreme Court of Virginia ordered the removal from office of a judge who had attempted to influence two potential witnesses in his wife's criminal trial. The Supreme Court of Virginia explained that if the Court finds by clear and convincing evidence that a judge's actions or conduct violated the Canons of Judicial Conduct for the Commonwealth of Virginia and "that the judge's actions were of sufficient gravity to constitute misconduct while in office, persistent failure to perform the duties of the office, or conduct prejudicial to the proper administration of justice," it must "censure or remove the judge from office." Id. at 753 (citations omitted). In determining that removal was appropriate, the Supreme Court stated that the judge's actions struck "at the heart of the judicial system" and were "particularly damaging to the integrity of the judicial process and the confidence of the citizens of the Commonwealth[.]" Id. at 755.

In this case, Judge Ademiluyi's removal from office was the only disposition sufficient to protect the public's confidence in the independence, integrity, and impartiality of judiciary and ensure the fair and impartial administration of justice. Cf. Diener and Broccolino, 268 Md. at 689, 304 A.2d at 603. Judge Ademiluyi's numerous violations of the MCJC constituted egregious misconduct in office and conduct prejudicial to the administration of justice. As we explained in Diener and Broccolino, id. at 689, 304 A.2d at 603, we are not bound by the Commission's recommendation and "have the power to disregard its recommendation entirely," so that justice may be served.

Judge Ademiluyi engaged in misconduct during the Lambright trial that violated Maryland Rules 18-101.2, 18-102.2(a), and 18-102.3(a) and was so egregious and prejudicial to the administration of justice that it cannot be tolerated. Judge Ademiluyi's misconduct not only violated the MCJC but also endangered Mr. Lambright's Sixth Amendment right to a fair trial. With her misconduct during the trial, Judge Ademiluyi demonstrated a lack of appreciation of the obligation to perform her duties as a judge in a fair and impartial manner and an inability or unwillingness to perform the duties of her office in the manner required of a judge. Judge Ademiluyi's comments to her law clerk about not granting requests for alcohol and drug evaluation and her instruction that her law clerk find grounds to deny a pending request show that her misconduct in failing to perform judicial duties fairly and impartially in the Lambright trial was not an aberrant occurrence. That a judge perform the duties of judicial office fairly and impartially is the most fundamental requirement of judicial service. We fully agree with the Supreme Court of Florida's statement that "no other principle is more essential to the fair administration of

justice than the impartiality of the presiding judge." <u>McMillan</u>, 797 So.2d at 571.

Judge Ademiluyi engaged in conduct that violated a plethora of other provisions of the MCJC. Judge Ademiluyi violated Maryland Rules 18-101.2 and 18-102.8(b) by behaving in a manner that lacked patience, dignity, and courtesy and failing to maintain the demeanor required of a judge. Judge Ademiluyi violated Maryland Rule 18-102.5(b) and (c) by, among other things, failing to cooperate with judges in the administration of court business and failing to comply with reasonable directives of a judge with supervisory authority.

Judge Ademiluyi violated Maryland Rule 18-102.9(a) and (c) in the <u>Lambright</u> trial by considering communications made to her outside of the presence of the parties and their attorneys (by initiating contact with the FJC to obtain information on her own about the Cortexflo camera), by investigating adjudicative facts in a matter independently, and in failing to consider only evidence in the record of the case and facts that could properly be judicially noticed. Judge Ademiluyi also violated Maryland Rule 18-102.11(a)(4) and (c) by failing to disqualify herself from participation in the <u>Lambright</u> trial despite the circumstance that her impartiality might reasonably be questioned and failing to disclose to the parties the basis for her disqualification. Judge Ademiluyi violated Maryland Rules 18-102.16(a) and 18-101.2 by failing to comply with the Letter of Cautionary Advice issued to her. She also violated Maryland Rule 18-102.16(a) by failing to comply with the reasonable request for a signature acknowledging her approval and adoption of her attorney's response to Investigative Counsel's notice. And, Judge Ademiluyi violated Maryland Rule 18-104.4(b) by making statements in her campaign video and blog post that

reasonably could have been perceived as being inconsistent with the independence and impartiality of the judiciary and violated Maryland Rule 18-104.4(d)(3) with her statements in the campaign video. Overall, Judge Ademiluyi engaged in egregious and "cumulative misconduct" that was "fundamentally inconsistent with the responsibilities of judicial office." McMillan, 797 So.2d at 571, 573 (cleaned up).

Despite violating a multitude of provisions of the MCJC, Judge Ademiluyi showed no remorse for her misconduct. At oral argument, when asked by the Court whether Judge Ademiluyi had remorse for anything at all about her conduct, Judge Ademiluyi's counsel responded only that he thought she might "have remorse for having reported a colleague for forgery because of what happened." Consistent with a lack of remorse, Judge Ademiluyi continued to engage in misconduct even after receiving the Letter of Cautionary Advice. In failing to comply with the Letter of Cautionary Advice, Judge Ademiluyi demonstrated "a lack of appreciation for the seriousness of her misconduct" and showed an inability or unwillingness to follow the basic and reasonable instruction that she not commit sanctionable misconduct in the future. Nickerson, 473 Md. at 534, 251 A.3d at 1101. Judge Ademiluyi showed no indication whatsoever that, with mentoring, monitoring,[46] and any potential health treatment plan, she would acquit the duties of her

_____

[46]When this Court asked during oral argument how monitoring of Judge Ademiluyi would work, the Commission's Executive Counsel indicated that monitoring might include reviews of Judge Ademiluyi on the bench and reviews of recordings of proceedings before her, likely conducted at random. In other words, the recommended monitoring would have occurred after the fact so to speak, i.e., after Judge Ademiluyi had already handled a matter. Under the circumstances of this case, we did not believe that such a condition would have been sufficient to deter future misconduct or assure that Judge Ademiluyi would perform the duties of office in a fair and impartial manner.

office fairly and impartially and in compliance with the MCJC.

Given the wide-ranging and pervasive nature of Judge Ademiluyi's misconduct, her inability to comply with the fundamental requirement that she perform the duties of office fairly and impartially, and her lack of remorse for blatant and egregious violations of the MCJC, we concluded that the Commission's recommended disposition was inadequate to protect the integrity of the judiciary and the fair and impartial administration of justice. With her misconduct and violations of the MCJC, Judge Ademiluyi showed that she could not be trusted to perform the duties of a circuit court judge. Judge Ademiluyi repeatedly violated basic principles that a judge is required to adhere to and showed no indication that she would be amenable to change or that she would ever acquit judicial duties in a manner that would be consistent with the fair administration of justice.

For all the reasons discussed herein, we concluded that Judge Ademiluyi's removal from office was the only disposition sufficient to preserve the integrity, independence, and impartiality of the Judiciary and assure the public that the Judiciary will not, and does not, condone such egregious judicial misconduct. As such, on May 6, 2024, we issued an order removing Judge Ademiluyi from office.